615 So.2d 926 (1993)
Brett Dewain SMITH
v.
Patricia Mary Mulflur SMITH.
No. CA 92 0959.
Court of Appeal of Louisiana, First Circuit.
March 5, 1993.
Writ Denied May 7, 1993.
*928 Thomas E. Gibbs, Baton Rouge, for plaintiff-appellee Brett Dewain Smith.
Ernest M. Forbes, Denham Springs, for defendant-appellant Patricia Mary Mulflur Smith.
Before LOTTINGER, C.J., and EDWARDS, SHORTESS, WHIPPLE and FOGG, JJ.
WHIPPLE, Judge.
This is an appeal by the defendant, Patricia (Patty) Mary Mulflur Smith Bayhi, from a judgment modifying a consent decree of joint custody by awarding the domiciliary custody of her two children to their father, Brett Dewain Smith.[1] For the following reasons, we reverse.

FACTS AND PROCEDURAL HISTORY
The parties were married on September 26, 1977 and physically separated on July 27, 1989. Two female children were born of the marriage; Aubrey, who is now eight years old, and Jessica, who is now seven. When the parties physically separated, the children remained in the care of their mother.
On August 3, 1989, Brett Smith filed a petition for separation, seeking both the temporary and permanent custody of the children pursuant to a proposed plan of joint custody. An order awarding Mr. Smith the provisional or temporary custody of the children was rendered on August 4, 1989. On the same date, Patty Smith filed an answer and reconventional demand, alleging that she had physical custody of the children and should be designated their temporary custodian. An order awarding her the temporary custody was also rendered on August 4, 1989.
Although Brett obtained a civil warrant on August 8, 1989, ordering Patty to return the children to him, the August 9, 1989 minutes of court show that the warrant was recalled and vacated. Thereafter, Patty retained physical custody of the children pursuant to the temporary decree rendered in her favor.
On November 16, 1989, a judgment of separation was rendered, and the parties agreed to continue the existing joint custody arrangement. Then, on November 28, 1989, the parties stipulated in open court to a detailed judgment which addressed the issues of joint custody and support. The stipulation was transcribed and later reduced to a written judgment which the *929 court signed on May 8, 1990. The stipulated judgment designated Patty Smith as the primary custodial parent and granted Brett Smith visitation rights on alternating weekends, or at other times by mutual consent of the parties. This is the original judgment of permanent, joint custody and was rendered by consent of the parties, without introduction of any evidence regarding the parental fitness of either party.
Thereafter, Patty Smith filed a petition for divorce, which was granted on June 26, 1990 and reduced to written judgment signed September 7, 1990. The judgment of divorce included a statement that the issue of child support had been stipulated to and that the parties reserved their right to relitigate the issue of child support without the necessity of showing a change in circumstances. However, the issue of custody was not specifically addressed and accordingly, the joint custody arrangement previously ordered continued in full force and effect.
On September 20, 1990, Patty Smith filed a "Rule to Establish and Set Specific Amount of Child Support" seeking an increase in and specific delineation of the amount of support to be paid by Mr. Smith. On October 5, 1990, she also filed a rule for injunctive relief seeking a protective order prohibiting Mr. Smith from appearing at her residence and place of employment and harassing her in front of their children. Mr. Smith then filed a rule seeking increased visitation. The record does not clearly indicate the disposition of these rules.[2]
On January 9, 1991, Mr. Smith then filed a pleading entitled "Answer and Traversal of Rule to Establish and Set Specific Amount of Child Support and Cross-Rule for Change of Custody" wherein he sought sole custody of the children on the basis that Patty had permanently relocated to Indiana with the children without his consent or consultation and without giving him prior notice of the move. Mr. Smith further alleged that this move from "their historical environment" was detrimental to their children and that he had remarried and could thus provide a more stable environment for the children. He also alleged that Patty had voluntarily become unemployed and was living with a man to whom she was not married in an environment which was "morally unfit for the raising of the minor children".[3]
A trial on this matter was held on April 19, 1991. During the pretrial conference, the trial court informed counsel for both parties that it would not allow the introduction of evidence concerning facts occurring prior to the original consent judgment. The court reasoned that such evidence was irrelevant to the proceeding because facts occurring before the original custody decree ostensibly were considered in the first fixing of custody. Accordingly, the court limited the evidence to events occurring after the stipulated judgment signed on May 8, 1990.
After hearing the evidence presented, the court took the matter under advisement and ordered the parties and their children to undergo psychological evaluations by Alan L. Taylor, Ph.D., a clinical psychologist. The matter was subsequently submitted for decision on the record, briefs and report of Dr. Taylor, although the parties later deposed Dr. Taylor and made the deposition a part of the record.
The trial court determined that it was in the best interest of the children to award sole custody to Mr. Smith. However, when the trial court rendered judgment on November 19, 1991, the court did not award sole custody to Mr. Smith; instead, the court modified the previous decree of joint custody by designating Mr. Smith as the primary custodial parent. In his appellate brief, Mr. Smith asserts that the court did this in light of Mrs. Bayhi's return to Louisiana *930 prior to the time judgment was rendered.[4]
The reasons for judgment dated October 29, 1991 show the trial court based its determination on a finding that Mrs. Bayhi was unjustified in moving to Indiana without advance notice to Mr. Smith or the children and on Dr. Taylor's recommendation that Mr. Smith be granted custody. The court did not address whether, under the evidence presented, the unannounced move to Indiana constituted a change in circumstances materially affecting the welfare of the children; however, it characterized Mrs. Bayhi's actions as impulsive and found that her alleged fear of Mr. Smith did not justify her failure to notify him beforehand of her intention to move.
At the trial of this matter, Mr. Smith testified that he did not consider Mrs. Bayhi to be an unfit parent, only that he and his new wife could provide better supervision and a more stable environment. The main reason he sought sole custody of his children was that Mrs. Bayhi had taken them with her to live in Indiana, thereby making it nearly impossible to exercise his visitation rights.
In response to objections by counsel for Mr. Smith, the trial court excluded testimony concerning Mr. Smith's verbal and physical abuse of Mrs. Bayhi during the time they had been married and before they physically separated, allowing this evidence only as an offer of proof. During her cross examination of Mr. Smith and during her direct testimony, Mrs. Bayhi sought to introduce this evidence to show that she was justified in moving to Indiana without notifying Mr. Smith or the children in advance of the move. Additionally, Mrs. Bayhi sought introduction of this evidence to rebut or impeach Mr. Smith's testimony that he never interfered with the relationship between Mrs. Bayhi and their children. The trial court also excluded evidence concerning the actions of Kay Allen Smith, Mr. Smith's present wife and stepmother of the children.
The trial court stated that based upon its observation of the parties during trial, the court was of the opinion that Mr. Smith currently harbored no desire to harm or harass Mrs. Bayhi. In its reasons for judgment, the trial court stated that Mrs. Bayhi "could not provide the Court with a single instance since the Original Judgment of Custody in which Mr. Smith had harassed or threatened her in any manner". The court further stated that it was "outraged" that Mrs. Bayhi had moved out of state without notifying Mr. Smith in advance and found that it was in the best interest of the children that they remain in Louisiana with their father.
Mrs. Bayhi timely perfected this devolutive appeal, urging five assignments of error:
1. The Trial Court erred by applying the "change of circumstances test" instead of the "best interest of the children test" in considering Mr. Smith's request for a change in custody.
2. The Trial Court erred by refusing to allow Patricia Bayhi to introduce evidence to rebut the allegation that she unjustifiably moved out of state, and to substantiate her decision to do so without advance consultation with Brett Smith.
3. The Trial Court erred by refusing to allow Patricia Bayhi to introduce evidence to rebut Mr. Smith's testimony that he did not interfere with the development of the relationship between her and her children.
4. The Trial Court erred when it limited the evidence about the children's new step-mother to acts and events which occurred only after the parties' stipulated custody decree.
5. The Trial Court erred by changing custody of the children to Mr. Smith.

DISCUSSION
When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy *931 burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). Where no considered decree of custody has been rendered, the "heavy burden" rule does not apply but a party seeking to modify an existing custody arrangement must still prove that a change in circumstances materially affecting the welfare of the child has occurred since the original decree and that the modification proposed is in the best interest of the child. Rogers v. Rogers, 577 So.2d 761 (La.App. 1st Cir.1991). A trial court's award of custody is entitled to great weight and will not be overturned on appeal unless an abuse of discretion is clearly shown. Bergeron, 492 So.2d at 1196; Rogers, 577 So.2d at 763.
As the Louisiana Supreme Court explained in Bergeron:
The reasons for the [change in circumstances] rule are that it is desirable that there be an end of litigation and undesirable to change the child's mode of living except for imperative reasons. Moreover, to require a party to show a change in circumstances materially affecting the child's welfare before contesting an award of custody, that he previously has had a full and fair opportunity to litigate, protects his adversary and the child from the vexation and expense attending multiple unjustified lawsuits, conserves judicial resources, and fosters reliance on judicial actions by minimizing the possibility of inconsistent decisions.
The change in circumstances rule is a jurisprudential precept developed by the courts in the absence of any legislated procedural law specifically governing child custody modification suits. (Citations omitted)
492 So.2d at 1195-1196.
Soon after the Supreme Court decided Bergeron, this court recognized that the change in circumstances rule is distinct from the heavy burden of proof rule for modification of custody. See Mosely v. Mosely, 499 So.2d 106 (La.App. 1st Cir. 1986), writ denied, 505 So.2d 1138 (La. 1987). Accordingly, Mrs. Bayhi is incorrect in her first assertion that the change in circumstances rule is inapplicable in the present case.

EXCLUSION OF EVIDENCE
Whether evidence is relevant or not is within the discretion of the trial court, and its ruling will not be disturbed absent a clear abuse of discretion. Barnes v. Thames, 578 So.2d 1155 (La.App. 1st Cir.), writs denied, 577 So.2d 1009 (La. 1991). However, application of the change in circumstances rule to this case does not automatically preclude the introduction of all evidence of facts occurring prior to the stipulated custody judgment. The trial court should not exclude evidence in a custody modification proceeding if that evidence is relevant and material to an issue which the parties have not previously had "a full and fair opportunity to litigate". Bergeron, 492 So.2d at 1195.
In her second and third assignments of error, Mrs. Bayhi contends the trial court erred in excluding evidence of physical and verbal abuse occurring during her marriage to Mr. Smith because this evidence was offered to show her justification for moving to Indiana without giving Mr. Smith or the children advance notice, and to rebut Mr. Smith's assertions that he never interfered with the relationship between Mrs. Bayhi and the children. Mrs. Bayhi further contends, in her fourth assignment of error, that the trial court erred in excluding evidence concerning Kay Allen Smith, Mr. Smith's present wife and the stepmother of the children.
The moral fitness and the mental and physical health of the parties involved are factors to be considered in custody determinations. Moreover, the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent is also a factor to be considered by the court. See LSA-C.C. art. *932 131 C(2). We conclude the trial court erred in refusing to consider the proffered testimony and documentary evidence. The trial court should have considered the proffered testimony of Mr. Smith (Proffer # 1), testimony which was both material and relevant to the issue of whether Mrs. Bayhi was justified in moving without advance notice. This is not an issue which the parties had a previous opportunity to litigate, and the trial court's exclusion of this evidence constitutes error as a matter of law.
The trial court should have also considered the evidence proffered during the testimony of Mrs. Bayhi (Proffer # 2), which was offered to impeach Mr. Smith's denial of various acts by him which are material and relevant to the issue of whether he interfered with the relationship between Mrs. Bayhi and the children, a factor to be considered in a custody dispute. To hold Mrs. Bayhi accountable for her actions in leaving Louisiana without allowing her to present evidence of the cumulative events and circumstances which contributed to or prompted such action constitutes an abuse of discretion.
We further conclude that the trial court abused its discretion in ruling that only evidence of events occurring after the stipulated custody judgment could be introduced on the issue of the stepmother's parental fitness. Mr. Smith and his present wife were not married until September 8, 1990, after the stipulated custody judgment of May 8, 1990. Thus, no previous opportunity existed to litigate this issue.
Because the trial court's determination of custody in this case has been interdicted by its legal error in excluding relevant and material evidence, we must determine this matter de novo based on the complete record before us, including the proffered evidence. See Rosell v. ESCO, 549 So.2d 840, 844 n. 2 (La.1989); ODECO Oil and Gas Company v. Nunez, 532 So.2d 453, 458 (La.App. 1st Cir.1988), writ denied, 535 So.2d 745 (La.1989).

MODIFICATION OF CUSTODY
In her final assignment of error, Mrs. Bayhi contends the trial court erred in awarding domiciliary custody of the children to Mr. Smith. In addition to her argument that the trial court erred in excluding evidence justifying the manner in which she moved to Indiana, Mrs. Bayhi maintains that Mr. Smith failed to prove that the move had a detrimental effect on the children. We agree.
As the party seeking a modification of custody, Mr. Smith was required to prove the occurrence of a change in circumstances materially affecting the welfare of the children and that the modification proposed was in the best interest of the children.
At the outset, we note that Mr. Smith's allegations that Mrs. Bayhi had voluntarily become unemployed and was living with a man to whom she was not married are not supported by the evidence. Mrs. Bayhi testified at trial that she was employed in Indiana and was earning more money than she had been earning in Louisiana, although she had not secured employment prior to moving. Further, she and Mr. Bayhi were married on December 28, 1990, approximately four months prior to the trial of this matter.
Even if the defendant had been living with Mr. Bayhi prior to her marriage to him, an allegation which she disputed at trial, she could no longer be considered to be an unfit mother because of the so-called reformation rule. The "reformation rule" mandates that a mother is not considered unfit simply because she has had an adulterous relationship, so long as she has reformed, either by ceasing the relationship or marrying the paramour. Griffin v. Griffin, 424 So.2d 1228 (La.App. 1st Cir. 1982). Assuming that Mrs. Bayhi could have been considered to be an unfit parent for the reasons alleged by Mr. Smith, we find that, under the circumstances of this case, she has reformed.
It is apparent from the record that the underlying reason for the trial court's modification of custody in this case was that Mrs. Bayhi moved to Indiana under the subterfuge that she was going there for the customary family holiday visit, without *933 telling the children or Mr. Smith of her true intentions. Relying primarily on the report of Dr. Taylor, the trial court determined that it was in the best interest of the children to award primary domiciliary custody to the father.
Obviously, because he did not accompany the children during their move to Indiana, Mr. Smith's ability to prove that the move had a detrimental effect on the children was limited. He testified that the children were not happy with their living arrangements and wanted to return to Louisiana. However, Mrs. Bayhi testified that the children were well adjusted and happy with their new home and that they had made numerous new friends. Mrs. Bayhi also testified that the children were doing well in school. As Mr. Smith was unable to present much evidence regarding the effect of the move on the children, the trial court apparently relied on the evaluation and report of Dr. Taylor.
Based upon his evaluation of the parties and the children, Dr. Taylor recommended "that the children be returned to the Baton Rouge area under the custody of their father". Because he found no direct evidence that either party was an unfit parent, Dr. Taylor based his recommendation upon other factors. In his report, Dr. Taylor explained the factors considered in making his recommendation:
These [factors] include the fact that the children were uprooted and removed from their local living situation and friends, and that neither they nor their father were informed that this was going to take place. Both of the children have clearly communicated that they wish to return to the Baton Rouge area, and doubtless they would prefer that their mother return with them. However, both have indicated that they would prefer to remain here if she chooses to stay in Indiana. This examiner tends to support that desire, in that the children have apparently suffered distress over the move and separation from their father, and they appear to have weighed the various factors involved in living in each locality according to their capacity. While it is likely that there has been a contribution from their father in terms of getting them to believe that a declaration on their part will force their mother to return to Louisiana, this examiner still believes that this is indeed the girls' sincere wish. They clearly define both parents as psychological parents and appear to have bonds with each of them.

* * * * * *
... Choosing to leave precipitously, Mrs. Bayhi forfeited the opportunity to have a judicial determination about custody before leaving. Her defense of this act by allegations about fears of Mr. Smith's behavior has not been followed by independent and compelling evidence that this is the case. Further, the girls do not corroborate the allegations in terms of accounts of their father's behavior toward them directly or even in remarks about witnessing conflict between their parents. It would seem then, in the best interest of the children, to have them return under their father's custody and that any further variations be resolved in the local judicial system.
This examiner feels that it would be in the best interest of the children's emotional welfare for them to return to the local area.
Thus, Dr. Taylor's recommendation was not based upon the fitness of either parent but upon his opinion that the domicile of the children should not be changed. In his deposition, Dr. Taylor testified that he ordinarily does not make absolute recommendations unless specifically asked to do so because recommendations should be qualified in terms of the reasons given. He further testified that the particular circumstances of this case made it very difficult for him to make a recommendation.
Under the facts presented herein, both parties are capable of providing a comfortable, suitable and loving home for the children. Although Mrs. Bayhi did not notify Mr. Smith in advance of her intention to remain in Indiana after the Christmas holidays, Mr. Smith did not present any evidence nor do we find from our examination of the record that the move materially and *934 adversely affected the welfare of the children. The evidence presented on this point suggests that the children were well adjusted to their new environment and continued to perform well in school, as they had done previously.
Although Dr. Taylor thought that Mrs. Bayhi exercised poor judgment in deciding to move out of state without giving advance notice to Mr. Smith or the children, he clarified that position in his deposition testimony:
That's not to say that she gave no thought to doing it or that there weren't reasons such as economic reasons or career advancement reasons, and so forth. The arbitrary part primarily has to do with the fact that she did not inform the children and did not inform Brett that this was going to take place.... I think that was very poor judgment on her part to not be willing to indicate to either the children or their father that this was going to be a move.
Dr. Taylor opined, and the trial court agreed, that Mrs. Bayhi's alleged fear of Mr. Smith did not justify her decision to move without giving advance notice to him. However, the trial court denied Mrs. Bayhi an opportunity to present evidence to rebut Mr. Smith's contention that Mrs. Bayhi's actions in moving to Indiana were unjustified.
Even though Mrs. Bayhi may have exercised poor judgment in failing to inform Mr. Smith and the children beforehand of her decision to move, the trial court's reasons for judgment indicate that it gave undue weight to this factor and to its effect on Mr. Smith's ability to exercise his right to visitation, rather than to the effect of the move on the children.
Custody should not be changed when to do so would punish a parent for past behavior when there is no proof of a detrimental effect on the children. Interference with visitation alone is not a sufficient reason to change custody absent a showing of a detrimental effect on the children. Everett v. Everett, 433 So.2d 705 (La.1983); Head v. Head, 500 So.2d 804 (La.App. 1st Cir.1986). An award of custody is not a tool to regulate human behavior. Everett, 433 So.2d at 708.
Mrs. Bayhi's stated justification for moving to Indiana was to improve the career opportunities of herself and Mr. Bayhi, who had enrolled in a Vo-tech school there. Mr. Bayhi testified that the option and availability of residing with Mrs. Bayhi's parents in Indiana made it easier for him to pursue that goal. Mr. Bayhi was a salesman and wanted to enter the field of computer programming, believing it to be a more secure occupation in the long term. Mrs. Bayhi testified that she did not give Mr. Smith or the children advance notice of her intention to move because she was afraid that Mr. Smith would react violently, based on his past abusive behavior, which occurred before and after the parties separated.
One account of Mr. Smith's verbal abuse involved a telephone call to the children in which Mr. Smith asked the children to ask their mother if she knew what "adultery" meant. Mr. Smith also admitted that he routinely called the children at 6:30 a.m. despite Mrs. Bayhi's objection, under the stated pretense that he was calling to wake the children up and to verify that they were up for school. However, the record shows that Mr. Smith's efforts in telephoning were also directed toward ascertaining whether Mr. Bayhi was present in the home. In another account of friction between the parties, Mrs. Bayhi stated that Mr. Smith referred to her as "sleaze" in front of the children after the parties separated.
The trial court accepted Mrs. Bayhi's assertion that she waited until she felt safe to tell Mr. Smith of her intention to reside in Indiana because Mr. Smith had physically abused her in the past. However, the trial court steadfastly refused to hear testimony concerning any abuse occurring prior to the stipulated custody judgment.
The evidence proffered during Mrs. Bayhi's testimony details numerous incidents of abuse and bizarre and inappropriate behavior by Mr. Smith, some of which he denied. Although Mr. Smith disputed *935 Mrs. Bayhi's version of some of the events, he admitted "poking" or accidentally striking Mrs. Bayhi during a confrontation before the parties separated, which occurred in the presence of the children. While he characterized the blow as accidentally inflicted, he admitted that the blow was inflicted while he physically held Mrs. Bayhi against her will to prevent her from leaving. He also admitted that the resulting trauma to Mrs. Bayhi's eye required medical treatment.
The record also shows that Mrs. Bayhi attempted to present pertinent records from the treating psychologist, Dr. Brant Hardy, who had counseled the parties. However, as the record indicates, Dr. Taylor was unable to consider this information in making his evaluation and recommendations because Mr. Smith refused to release the records, on advice of counsel.
We have carefully considered the evidence and are constrained to conclude that the record does not indicate that the move adversely affected the welfare of the children. The only evidence which would support a finding that the move adversely affected the children is the following phrase from Dr. Taylor's report: "the children have apparently suffered distress over the move and separation from their father". However, at the time of trial, the children were living comfortably with their mother in their grandparents' home. In particular, Mr. Smith failed to prove that continuity could be better promoted by returning these children of tender years to Louisiana to live with their father and stepmother than by keeping them with their mother, who provided their care since birth.
It is well settled that stability of environment is a factor to be taken into account in determining what is in the best interest of the children. A change from a stable environment should not be made absent a compelling reason. A particular consideration is the length of time the child has been with the domiciliary parent. Rogers, 577 So.2d at 763. Here, the children have been with their mother their entire lives. While the move to Indiana allowed less contact with their father, this factor alone does not establish by the appropriate standard that the move was detrimental to the welfare of the children or a change in circumstances sufficient to justify a change of custody in this case. See Weems v. Weems, 548 So.2d 108 (La.App.2d Cir.1989).

DECREE
For the foregoing reasons, we hereby reverse the November 19, 1991 judgment of the trial court and reinstate the judgment rendered on May 8, 1990. We hereby maintain joint custody and designate Patricia Mulflur Smith Bayhi as the domiciliary parent. We remand this matter to the Family Court of East Baton Rouge for implementation of a joint custody plan to provide for reasonable visitation privileges in favor of Brett Dewain Smith and for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed to Mr. Smith.
REVERSED AND REMANDED.
SHORTESS, J., dissents and assigns reasons.
SHORTESS, Judge, dissenting.
I agree with the majority on the exclusion of evidence issue;[1] however, when it is considered by the appropriate standard of review, it can help neither party: Mrs. Smith makes certain allegations and Mr. Smith denies themthe cold record keeps the scales evenly balanced.
Dr. Alan L. Taylor, the court-appointed psychologist who interviewed both parties and the children, came to the conclusion that it was in the children's best interest to live with their father. My review of the record convinces me the father should be the primary domiciliary parent. This was also the trial court's decision, which I would affirm for the stated reasons.
I respectfully dissent.
NOTES
[1] It is apparent from the pleadings signed by Mr. Smith that his middle name is actually misspelled in portions of the record.
[2] The minutes of court of December 4, 1990 show that on motion of Mr. Smith, these matters were continued and reassigned for hearing on January 9, 1991.
[3] Plaintiff and Kay Odom Allen were married on September 8, 1990. Patty Smith and James Bayhi were married on December 28, 1990.
[4] Although the record contains no direct evidence of this fact, a joint custody plan signed on March 30, 1992, in conformance with the trial court's judgment of November 19, 1991, supports Mr. Smith's assertion that Mrs. Bayhi in fact returned to Louisiana.
[1] The trial court's legal error interdicted its judgment and requires us to review the record de novo. Rosell v. ESCO, 549 So.2d 840 (La. 1989).