633 So.2d 342 (1993)
Ronda M. MATTHEWS
v.
Michael J. MATTHEWS.
No. CA 93 0559.
Court of Appeal of Louisiana, First Circuit.
November 24, 1993.
*343 Marilyn M. Lambert, Lambert & Lambert, Gonzales, for plaintiff/appellee Ronda Matthews.
John A. Gutierrez, Gonzales, and John B. Comish, Baton Rouge, for defendant/appellant Michael Matthews.
Before CARTER, GONZALES and WHIPPLE, JJ.
*344 GONZALES, Judge.
This is an appeal by the defendant, Michael J. Matthews, from a judgment limiting his access to his two minor children to periodic, restricted, supervised visitation. The children currently reside with their mother, Ronda Millet Matthews.

FACTS AND PROCEDURAL HISTORY
Michael J. Matthews and Ronda Millet Matthews were married on August 8, 1974. Two children were born of the marriage: Christopher Lee Matthews, born on August 25, 1981; and Mikelyn Joy Matthews, born on September 13, 1985.
In June of 1988, Mr. Matthews, an attorney, pled guilty to theft and forgery charges stemming from his misappropriation of monies from a client escrow account. On January 20, 1989, he was sentenced to ten years imprisonment at hard labor. On September 21, 1989, a stipulated judgment was signed by the trial court granting sole temporary custody of the minor children to Mrs. Matthews "without prejudice and with full reservation of rights." Based on Mr. Matthews' felony conviction and subsequent incarceration, Mrs. Matthews filed for a divorce pursuant to former La.C.C. art. 139.[1] On October 9, 1989, judgment was signed granting the divorce.
Mr. Matthews actually served three years and four months in prison. At the beginning of his incarceration, his children visited him regularly. However, according to Mr. Matthews' testimony at the hearing on his rule for joint custody, approximately two months before Mrs. Matthews filed for divorce, the visits dwindled. Thereafter, although contact was maintained through telephone calls and written letters, Mr. Matthews testified that he did not see his children for approximately two and one-half years. Although not exactly clear, the record contains some evidence that the lack of visitation stemmed from the fact that the names of Mrs. Matthews and the children were not on the list of approved visitors able to see Mr. Matthews while in prison. However, Mr. Matthews' testimony is directly contradictory; he testified that the names of Mrs. Matthews and both children were on the approved list for the entire period of his incarceration.
In May of 1992, Mr. Matthews was released from prison. On July 1, 1992, he filed a "Rule for Joint Custody and Visitation" alleging that, despite amicable efforts to see his children, Mrs. Matthews had refused him any access to them. He requested that Mrs. Matthews be ordered to show cause why joint custody of the children should not be awarded to them both. He attached a "Proposed Joint Custody Implementation Plan" to the rule in which he proposed that his custodial access to the children gradually increase from every Saturday, to every Saturday and Sunday, and eventually to every other weekend plus some holidays and summer vacation.
By judgment rendered July 31, 1992, and signed August 12, 1992, the trial court granted Mr. Matthews supervised visitation with the two children every other Saturday from 1:00 p.m. until 6:00 p.m. beginning on August 8, 1992. The visits were to be supervised by one of three specifically named persons or any other person acceptable to both parties and who was to be chosen by Mrs. Matthews. Mr. Matthews was also ordered to pay Mrs. Matthews $150.00 per month in child support.[2] The matter was reset for hearing on October 30, 1992.
On October 16, 1992, Mr. Matthews filed a "Motion to Re-fix Rule" requesting that his prior rule for joint custody be re-fixed for hearing. He alleged that the visitation arrangements ordered by the court in the August 12, 1992 judgment did not provide him *345 enough quality time with his children, made it difficult for him to arrange activities suitable for both children given their age differences, and also made it difficult for the three of them to engage in activities outside the immediate area of their respective residences. The rule was re-fixed for hearing on November 6, 1992 but was actually heard on November 13, 1992.
By judgment rendered November 13, 1992, and signed January 21, 1993, the trial court ordered that Mr. Matthews' visitation with his children was to continue in accordance with the previously imposed guidelines outlined in the August 12, 1992 judgment. The matter was re-fixed for review on June 4, 1993 for consideration of future modifications of the visitation arrangement.
From the January 21, 1993 judgment, Mr. Matthews appeals, asserting that the trial court abused its discretion and committed manifest error in (1) failing to award him joint custody of his two minor children, and (2) failing to award him reasonable, unsupervised and meaningful visitation with his two minor children.

DISCUSSION
Louisiana Civil Code article 134 directs that "[i]n all cases of divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the parents in accordance with Article 131." A change of custody may be made if it is shown that the best interest of the child requires that change. La.C.C. art. 131(E). Joint custody is presumed to be in the best interest of the child. La.C.C. art. 131(C). This presumption may be rebutted only by a showing that joint custody is not in the best interest of the child, after a consideration of the factors listed in La.C.C. art. 131(C)(2)[3]. Best interest of the child is the paramount consideration in child custody matters, including those involving change of custody. Lindner v. Lindner, 569 So.2d 173, 175 (La.App. 1st Cir.1990).
When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages. Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986); Smith v. Smith, 615 So.2d 926, 930-931 (La.App. 1st Cir.), writ denied, 617 So.2d 916 (La.1993). However, where no considered decree of custody has been rendered, the "heavy burden" rule does not apply; a party seeking to modify an existing custody arrangement must still prove that a change in circumstances materially affecting the welfare of the child has occurred since the original decree and that the modification proposed is in the best interest *346 of the child. Smith v. Smith, 615 So.2d at 931.
A "considered decree" is one which is rendered after receipt by the trial court of evidence concerning the parental fitness of the parties. Bridgers v. Bridgers, 509 So.2d 793, 794 (La.App. 1st Cir.1987). In the instant case, the original decree awarding Mrs. Matthews temporary sole custody was stipulated. The record does not indicate that evidence was adduced concerning parental fitness for custody. Thus, the original custody decree was not a considered decree, and the test to be applied in modifying the current custody arrangement is to determine whether there was a "change in circumstances" and whether the proposed modification "is in the best interest of the child." Smith v. Smith, 615 So.2d at 932; Lindner v. Lindner, 569 So.2d at 176.
It is evident from the record that a change in circumstances has occurred which has had a material effect on the welfare of the children. Although their welfare depended essentially on their mother during the period of their father's incarceration, Mr. Matthews has been released from prison and is able to resume active participation in the raising of his children. His regained freedom to resume his parental responsibilities is a significant circumstance which unquestionably affects the welfare of the two children.
Further, it should be noted that Mr. Matthews' status as a convicted felon does not itself rebut the presumption that joint custody is in the best interest of the children. Mr. Matthews testified that restitution has been made to the victims of his crimes and that he has received no threats from anyone since his release from prison. On the other hand, Mrs. Matthews testified regarding her concern that Mr. Matthews could be the subject of "victim retaliation" at a time when the children are in his care. She explained that a wife of one of the victims had implied to Mrs. Matthews that her husband would physically harm Mr. Matthews if he ever met up with him; Mrs. Matthews also testified that someone had spoken to her father about physically harming Mr. Matthews. However, we find that Mrs. Matthews' testimony is merely hearsay, speculative, and in light of Mr. Matthews' contradictory testimony, is insufficient to establish that Mr. Matthews' status as a convicted felon will have a detrimental effect on the children. See Geisler v. Geisler, 506 So.2d 1332, 1335 (La.App. 2nd Cir.1987).
With regard to whether the change from sole custody to joint custody is in the best interest of the Matthews children, we reiterate that joint custody is presumed to be in their best interest. La.C.C. art. 131(C). As the party opposing joint custody, Mrs. Matthews has the burden of proving that an arrangement other than joint custody is in the children's best interest. La.C.C. art. 131(A)(2); Turner v. Turner, 455 So.2d 1374, 1379 (La.1984); Lindner v. Lindner, 569 So.2d at 175. A proper showing that a different arrangement is in the children's best interest includes consideration of the eleven specific, enumerated factors in La.C.C. art. 131(C)(2), plus any other factor which the trial court deems to be relevant.
At the November 13, 1992 hearing, the trial court gave the following reasons for continuing the sole custody of Mrs. Matthews with restricted, supervised, five-hour visitation on every other Saturday in favor of Mr. Matthews:
Well, the Court feels that it is regrettable that this matter had to be heard at all. All of the parties who loves (sic) the minor children in this case have already suffered very greatly due to the criminal activities of Mr. Matthews. Know that all the parties in this case that this is a painful experience and one that no party takes any comfort in having to bring before the Court. On July 31, 1992 this Court set-up a system of supervised visitation. The supervised visitation was established by the Court mainly in accordance with the report that I received from Dr. Brun in which the doctor felt that supervised visitation between Chris and his father were (sic) possible only at Chris' initiation. Dr. Brun has treated Christopher since 1989[,] and he felt[,] and I feel that he is in the best position to determine what is in the best interest of the minor children. The Court realizes that Mr. Matthews is not satisfied *347 with the visitation that he currently has. But this Court cannot and is not bound to alter visitation solely to please one of the parties to the detriment of the best interest of the minor children. No evidence has been presented here today that has convinced the Court that it should ignore the recommendations of Dr. Brun. Even[]though, the supervised visitation is a burden both to Mr. Matthews and Mrs. Matthews and their family, the Court feels that this is [in] the best interest of the minor children to continue the supervised visitation. The Court hopes that the parties could get together and agree on other parties to supervise visitation. I feel just limiting it to two (2) or three (3) people creates even a greater burden. And I hope that both parties could be a little more flexible in allowing choices on either side to supervise the visitation. Therefore, the Court will continue the supervised visitation as set forth from the judgment rendered on July 31, 1992. The Court will set this matter for review on June 4, 1993 at which time the court will consider modifying Mr. Matthews['] visitation if the Court is convinced that a modification is in the best interest of the minor children.
The above soliloquy by the trial court indicates that the primary basis of his decision to deny joint custody to Mr. Matthews was some type of psychological report concerning the minor child, Christopher, issued by a Dr. Brun; however, this report is not found in the record.[4] Although a trial court's decision in a child custody case will not be overturned absent a showing of an abuse of discretion, Smith v. Smith, 615 So.2d at 931 and Rogers v. Rogers, 577 So.2d 761 (La.App. 1st Cir.1991), there must be sufficient evidence in the record showing that the presumption of joint custody has been rebutted. We find that the trial court abused its discretion in relying solely on the opinion of a single doctor to deny joint custody of the children to Mr. Matthews; the abuse is particularly apparent with regard to the custody of the minor child, Mikelyn, who was not even mentioned in relation to the report submitted by Dr. Brun.

CONCLUSION
Although the trial court is empowered to consider any factor relevant to a child custody dispute, it is improper for it to base its decision solely on the opinion of a single doctor without consideration of the specifically enumerated factors set forth in La.C.C. art. 131(C)(2). We have reviewed these statutory guidelines in light of the facts of this case and do not find that the presumption of joint custody was rebutted.
Thus, this case is remanded. The trial court shall require Mr. and Mrs. Matthews to submit, separately or jointly, a plan for implementation of joint custody of the minor children which complies with the requirements of La.C.C. art. 131(A)(1).
Because we find that the trial court erred in failing to award joint custody in this case, we need not address Mr. Matthews' argument regarding the reasonableness of the prior visitation arrangements.
REVERSED AND REMANDED.
NOTES
[1] Former La.C.C. art. 139 provided, in pertinent part:

Immediate divorce may be claimed receprocably [reciprocally] for one of the following causes: ... (2) Conviction of the other spouse of a felony and his sentence to death or imprisonment at hard labor.
The substance of this article is reproduced without substantive change in current La.C.C. art. 103(3).
[2] Mr. Matthews' support obligation was thereafter raised, by judgment rendered August 28, 1992, to $200.00 per month effective September 1, 1992, and to $250.00 per month effective January 1, 1993.
[3] Louisiana Civil Code article 131(C)(2) reads:

The presumption in favor of joint custody may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to all of the following factors:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute. However, the classification of persons according to race is neither relevant nor permissible.
[4] There is an order dated July 17, 1992 from the trial court ordering Dr. John Braun (sic) to supply the court with a report concerning whether it would be in the best interest of the minor child. Christopher Matthews, to have restricted visitation rights with his father. However, the report is not in the record.