I,COOKS, Judge.
STATEMENT OF THE CASE
This is a child custody dispute involving allegations of sexual abuse of an eight-year old child by her father, J.R.A., appellee.
*634 J.R.A. and C.S.A. were divorced in September 2000. In August 2000, a joint custody order was signed which designated the mother, C.S.A., as the domiciliary parent of the minor child and assigned weekend visitation to J.R.A. based on his work schedule. Subsequently, J.R.A. filed a Rule alleging C.S.A. failed to comply with the weekend visitation schedule. A hearing was held on January 8, 2001.
C.S.A. testified at the January 8, 2001 hearing that she failed to comply with the court order because of her belief that the minor child had been sexually abused by her father, J.R.A. C.S.A. based her current suspicions on the child’s erratic and disturbing behavior when the child returned from J.R.A.’s home and on incidents of J.R.A.’s past inappropriate behavior with the minor child witnessed during the marriage. No physical examination was performed on the child at the time. When questioned regarding the child’s behavior, C.S.A. testified as follows:
When she came back she was distraught. She refused phone calls from him, she did not want to go to her visitation. When the next visitation came up, she got sick, she did not want to go. He would call, I would force her to talk on the phone; and she would hang up on him. And from there it just — I continued to make her go; but I had decisions as to some of the behavior that she displayed ... She would have severe temper tantrums, nightmares.
She would not talk to her father on the phone. She did not want to go see him. She was having nightmares, displaying behavior that confused me and upset me. Because I did not know what was wrong. I started seeking out counseling to see if it was just an anger issue or if there was something more to it.
At the hearing, C.S.A. related incidents of J.R.A.’s past inappropriate behavior with the minor child during the marriage. She testified as follows:
He allowed the child to follow him to the bathroom for bowel movements, to urinate. He would take showers with her and allow her to play with his penis. I walked in on this several times and had to 12remove her from the bathroom. Incidences of where she would be in the bathtub with him ... He has taken a bath with him, but I guess at the age, maybe, around three. We got in this huge fight three until ... he left the house, that she was way too old to be taking' a bath with him or sleeping with him nude ... And she has went to bed without underwear on, but she was wearing a t-shirt ... That I witnessed, was, I believe, the night before I had the Sheriffs Office evict him from our home; he took a bath with her ... They were taking a bath together ... she was six years old ...
C.S.A. felt this behavior was inappropriate and voiced her objection on several occasions.
We had numerous fights. But, I mean, she never said that anything more than that happened. When I would become aware of it, I would try and do the best I could to stop it. Remove her from the bed, take her out of the bathroom, try to distract her.
J.R.A.’s past inappropriate behavior with the minor child coupled with the child’s current errant behavior prompted C.S.A. to seek counseling for her child. C.S.A. contacted counselor, Lynn McDonald, who interviewed the minor child. Mr. McDonald contacted the OCS in Beauregard Parish to initiate an investigation of the sexual abuse allegations. Mr. McDonald was not called to testify at the January 8, 2001 hearing.
*635 C.S.A. testified that her child was not responding to Mr. McDonald, and she sought help from another counselor, Anne Fournet, who also interviewed the child. Additionally, detective Vicki Hogan, sex crimes investigator for the Calcasieu Parish Sheriffs Department, was notified of C.S.A.’s suspicions. Neither Ms. Fournet nor Ms. Hogan were called to testify. The record indicates telephone contact between the trial judge and the OCS occurred, however, no reports were filed in the record and the OCS counselors were not called to testify.
Following the testimony, the trial court modified the earlier visitation order. The judge ordered supervised weekend visitation with the minor child at the home of J.R.A.’s mother, B.A. The court deferred a ruling on the sexual abuse issue until March 29, 2001 when investigations pertaining to the allegations were expected to be [..¡completed by the Beauregard and Cal-casieu Parish Sheriff Departments. Additionally, the court ordered the parties, including the minor child, to be examined by psychologist John C. Simoneaux, PhD.
On July 26, 2001 Dr. Simoneaux interviewed the minor child as well as C.S.A., J.R.A. and his new wife, A.A. The report concluded:
Based on these results, it appears that J.R.A. and A.A. clearly have the most potential to provide the necessary support, encouragement, and stability that L.A. needs at this time ... J.R.A. and his present wife are able to afford simply more logistical stability than what is available to C.S.A. They have a stable home, a short-lived, but apparently stable marriage, steady jobs, etc. C.S.A. has none of these attributes ... I believe that J.R.A. and A.A. should enjoy primary domiciliary custody.
On September 18, 2001, J.R.A. filed a Petition for Rule to Change Custody. The petition alleged the following:
There has been a change in circumstances since the previous judgment; namely that the Defendant has made numerous attempts at keeping the minor child away from the Petitioner, has made numerous false reports regarding Petitioner to various law enforcement officials, and has behaved in a manner which convinces the Petitioner that the Defendant has no desire to foster a relationship between the Petitioner and his minor child.
In addition, the court appointed psychologist has performed an examination of all parties and has concluded that it would be in the child’s best interest if Petitioner were named as the domiciliary parent.
On September 18, 2001, by stipulation of both parties, a Judgment was signed in which J.R.A. was again granted unsupervised visitation with the minor child for two weekends a month according to his work schedule. C.S.A. remained the domiciliary parent. However, the court set a hearing date on November 14, 2001 to consider J.R.A.’s petition for a change in custody. The parties were notified of the date in open court.
On the weekend of September 21-23, 2001, J.R.A. exercised unsupervised overnight visitation with the minor child. Shortly thereafter, C.S.A. noticed the child’s undergarments were soiled with blood and the child was complaining of blood pin her stool. This time, C.S.A. sought medical attention for her minor child.
On September 29, 2001, C.S.A. took L.A. to the emergency room of the DeQuincy Memorial Hospital. The emergency room physician, Dr. Jalah Joudel, performed a *636 physical exam and made the following findings:
[TJhere is a small shin tear at the 12: o’clock and 6 o’clock of the rectum but not full thickness, as well as an abraded area to the 6 o’clock area of the vaginal orifice which is triangular in shape and about 2-3 mm long and 2 mm at the widest point which is at the orifice opening, there is no blood on exam at present, no hemorrhoids are present.
Based on his physical findings, Dr. Jou-del forwarded a copy of the report to the Sex Crimes unit of the Calcasieu Parish Sheriffs Office. On October 24, 2001, a vaginoscopy under general anaesthesia was performed by Dr. Scott Bergstedt who made the following findings:
She was noted to have a healed hymenal tear at six o’clock position which is compatible with vaginal penetration at some point in her life, but it is healed and seems to be an old injury. She was also noted to have some pinkish discharge coming from the cervical canal which would suggest some estrogen effect and probably considering her age and the amount of stress she is under at this time and the family situation, this could very well be explained as just early estrogen effect and could account for her bleeding.
(Emphasis added)
Between September and November 2001, C.S.A. failed to comply with the weekend visitation order of September 18, 2001 and hid the child from J.R.A.
The November 14, 2001 hearing on J.R.A.’s Petition for Rule to Change Custody was held. C.S.A. did not attend this hearing and her attorney, Ms. Oubre, filed a motion to withdraw as counsel of record for C.S.A. The trial court refused to grant the motion to withdraw and required Ms. Oubre to represent C.S.A. at the hearing. The trial court indicated C.S.A. had received notice of the hearing in open court in September.
The hearing proceeded without C.S.A. in attendance. J.R.A. called several lay | ¡^witnesses to testify on his behalf. He also introduced the report of Dr. Simo-neaux, medical records of DeQuincy Hospital which contained records of the emergency room examination by Dr. Jalah Joudel, medical records from the Pediatric Center and the transcript of testimony taken at the January 8, 2001 hearing. Ms. Oubre, representing C.S.A., presented no evidence and called no witnesses.
The trial court ruled in favor of J.R.A., granting him sole custody of the minor child. C.S.A. was granted supervised visitation of an unspecified nature. Additionally, the court issued a preliminary injunction enjoining C.S.A. from taking the minor child for any medical treatment without first obtaining the consent of the father. The trial court relied on findings of psychologist John Simoneaux stating:
I do want to refer, however, to the psychological evaluation that was done by Dr. Simoneaux. This was done on a joint agreement of the parties, whereby J.R.A., A.A., C.S.A. and L.A. were all examined. Dr. Simoneaux is probably the preeminent psychologist in this area, as far as I am concerned. He is very well respected among judges throughout the state....
The trial court ruled on the issue of sexual abuse stating:
[TJhere has been continued allegations of sexual abuse. In the DeQuincy Memorial Hospital record, a certified copy having been offered in the record, on the first page of that record, it’s handwritten by, apparently, the physician: ‘Mom said possible sexual abuse by father. No proof.
*637 From the prior hearing I had reviewed a video tape where L.A. was interviewed and where it was mentioned at the very end of the interview that L.A. was saying that her father had done some improper sexual things. It appeared that, in all probability, L.A. was making this statement right at the end of the interview ... to make sure that the interviewer told her mother that she had done this.
The OCS has been called into this thing two or three times. Their reports back to me are that if there is any evidence of any sexual abuse, it has been so tainted by C.S.A. prompting of this child as to be absolutely worthless to them to support any of the allegations she’s made. Without evidence of sexual abuse-and I will have to say without any evidence of sexual abuse-the Court has to conclude that no such abuse occurred.
IfiThe trial court signed civil warrants to facilitate the location and delivery of the child to J.R.A. Judgment was signed in accordance with the ruling on November 26, 2001. C.S.A. did not appeal this judgment.
C.S.A. then secured the services of another attorney. On January 23, 2002, C.S.A. filed Motions to Set Aside the Award of Sole Custody and a Rule to Modify Custody based on newly discovered medical evidence, namely, the exam of Dr. Scott Bergstedt and the emergency room report of Dr. Jalah Joudel. C.S.A. also sought to introduce the testimony of Terry Jay Moody, Ph.D., a psychologist, who examined the child on September 15, 2001; Shanna McCarthy, Children’s Advocacy Center, the forensic evaluator, who prepared two videotaped sessions with the minor child; and Vicki Hogan, Sex Crimes Investigator, Calcasieu Parish Sheriffs Office. J.R.A. filed an Exception of No Cause of Action alleging that the evidence C.S.A. relied on could have been obtained and presented at the November 14, 2001 hearing. A hearing on all motions was held on January 31, 2002. C.S.A. again was not in attendance.
The trial judge refused to allow C.S.A’s attorney to call any witnesses or present the physical evidence in support of her contention that the minor child had been sexually abused by her father. C.S.A.’s attorney objected to the court’s ruling and sought to make a proffer of the evidence. The trial court refused to allow the proffer of testimony. The court continued the November 14, 2001 judgment giving sole custody of the minor child to her father and made the following observations:
As also previously stated by this Court, I believe in a previous hearing, the Beauregard Parish OCS has informed the Court that they have on two occasions looked into this matter and that because of the very apparent coaching of this little girl by C.S.A., they could make no determination that would indicate sexual abuse.
The Court has given C.S.A. every opportunity prior to this time to establish her allegations of sexual abuse, and I am quite sure that she will continue to try to do so no matter what this Court rules at this time.
So it’s the ruling of the Court that the sole custody of the child granted to J.R.A. in the ruling of November 14th will continue in effect. The Court will consider applications for supervised visitation by C.S.A.
|7I am deferring all contempt matters to a hearing on March the 14th. I will hear nothing further in this case at this time.... Motion for proffer is denied.
C.S.A. appeals from the January judgment continuing sole custody to J.R.A. and asserts the trial court erred in failing to *638 allow her the opportunity, at the modification hearing, to present expert testimony and physical evidence and in further failing to allow her to proffer the evidence. For the reasons assigned below, we reverse the judgment of the court excluding relevant evidence and remand for a custody hearing in which all pertinent physical evidence and testimony is presented to the court and for a determination regarding appointment of counsel for the minor child.
■ LAW AND ARGUMENT
The rule for a change of custody was articulated in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). When a trial court has made a considered decree of permanent custody the party seeking to change custody bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. A considered decree is one for which the court has received evidence regarding parental fitness to exercise child custody.
Placing a heavy burden of proof fosters an end to litigation and the possible disruption of the child’s living arrangements except for imperative reasons. Additionally, requiring a party to prove by “clear and convincing evidence” the need for a change in custody protects the parties from the “vexation and expense attending multiple unjustified lawsuits, conserves judicial resources, and fosters reliance on judicial actions by minimizing the ■ possibility of inconsistent decisions.” Bergeron, 492 So.2d at 1193.
^However, the heavy burden of proof only applies if the moving party was given a “full and fair opportunity to litigate” and the court received all available evidence pertinent to the issue of parental fitness to exercise custody. AEB v. JBE, 741 So.2d 189, 192 (La.App. 2 Cir.1999).
If the original custody arrangement was entered into by stipulation of the parties, it is not a considered decree, Scott v. Scott, 665 So.2d 760 (La.App. 1 Cir.1995), and the heavy burden of proof of Bergeron does not apply. Norris v. Norris, 604 So.2d 107 (La.App. 2 Cir.1992). The burden of proof also must be lessened when the court, for whatever reason, did not-receive all the pertinent evidence relating to the issue of parental fitness. However, the undisclosed evidence must be so substantial that, if considered at the time, it would have materially played a part in the court’s “best interest” determination. In such cases, the party seeking to modify an existing custody arrangement must still prove by a preponderance of the evidence that the modification proposed is in the best interest of the child. Scott v. Scott, 665 So.2d 760 (La.App. 1 Cir.1995).
Newly discovered physical evidence which tends to show that abuse has occurred is sufficient to establish a material change in circumstances. Norris v. Norris, 604 So.2d 107 (La.App. 2 Cir.1992). In Norris, the mother sought sole custody of the minor child and restricted/supervised visitation by the father. Ms. Norris based her request on newly discovered evidence of her former husband’s past sexual misconduct with her younger sister who was seven at the time. The sister, nineteen at the time of trial, testified she did not tell her sister of the abuse until recently. The trial court found the sister’s testimony more credible than the husband’s denial and granted sole custody to Ms. Norris and restricted/supervised visitation to the father.
*639 We find the trial court erred in not allowing introduction of the physical |flevidence and other testimony at the hearing in January 2002 which was relevant to the issue of J.R.A.’s parental fitness to assume sole custody of the minor child. In Smith v. Smith, 615 So.2d 926 (La.App. 1 Cir.1993) a stipulated judgment designated the mother (Mrs. Bayhi) as primary custodial parent and granted Mr. Smith visitation on alternating weekends. Mr. Smith filed a rule for sole custody on the basis that Mrs. Bayhi moved to Indiana without his consent. Following a hearing, the trial court awarded sole custody to Mr. Smith finding Mrs. Bayhi was unjustified in moving to Indiana without advance notice to Mr. Smith and the move interfered with his right to visitation. The trial court excluded testimony concerning Mr. Smith’s verbal and physical abuse during the marriage as Mrs. Bayhi’s reason for moving without notice. The appellate court reversed the decision of the trial court awarding sole custody to the father and on the issue of exclusion of relevant evidence. The court stated:
The trial court should not exclude evidence in a custody modification proceeding if that evidence is relevant and material to an issue which the parties have not previously had a “full and fair opportunity to litigate”.... The trial court should have considered the proffered testimony of Mr. Smith (Proffer #1), testimony which was both material and relevant to the issue of whether Mrs. Bayhi was justified in moving without advance notice. This is not an issue which the parties had a previous opportunity to litigate, and the trial court’s exclusion of this evidence constitutes error as a matter of law.
Smith, 615 So.2d at 931-32.
The issue of the sexual abuse of the minor child was not fully and fairly litigated at the November 14, 2001 hearing be-cause the trial court did not have all of the available evidence relevant to this issue at the time of trial. C.S.A. was not present at the hearing nor did she assist her coun-sel in trial preparation. Her attorney filed a motion.to withdraw as counsel of record which was denied by the court. . At the trial, C.S.A.’s attorney did not introduce any physical evidence nor did she call any witnesses in support of the allegations of sexual abuse., While we recognize it was the responsibility of the mother to bring all available physical evidence to the | inattention of the court, we are not willing to penalize the child for the failure •of the mother to protect the child’s interest. This is a bitterly contested matter involving serious allegations and C.S.A.’s irresponsible behavior has thwarted the best efforts of the trial court to ascertain the truth concerning allegations of sexual abuse. However, in situations, such as the present one, where it becomes clear neither party is acting in the best interest of the child, the trial court may appoint counsel for the child to ensure the fair and full presentation of all relevant evidence.
La. R.S. 9:345(A) • provides ■ in relevant part:
In any child custody or visitation proceeding, the court, upon its own motion, upon motion of any parent or party, or upon motion of the child, may appoint an attorney to represent the child if, after a contradictory hearing, the court determines such appointment would be in the best interest of the child. In determining the best interest of the child, the court shall consider:
(1) Whether the child custody or visitation proceeding is exceptionally intense or protracted.
(B) The court shall appoint an attorney to represent the child if, in the contradictory hearing, any party presents a *640 prima facie case that a parent or other person caring for the child has sexually, physically, or emotionally abused the child or knew or should have known that the child was being abused.
(Emphasis added).
Once the allegation of sexual abuse was made in January 2001, considering the contentious relationship between the parties and C.S.A.’s refusal to cooperate with the court or her own counsel, the court would have been justified in appointing independent counsel for the minor child in order to ensure that all the facts of the case were presented to the court. We do not find from the record this was done.
What is most remarkable about the November 14, 2001 hearing is not what is present on the record, but rather what is absent from it. While the trial court relied primarily on the report of July 26, 2001 by Dr. Simoneaux in making his determination, Dr. Simoneaux was not called to testify at the trial. There were no | ¶ representatives from OCS present in court and the record is devoid of OCS reports concerning this matter. The judge apparently was in telephone contact with OCS and relied on the facts told to him in private conversations with OCS to make his determinations regarding the validity of the charges against J.R.A. The investigating officers from the Beauregard and Calcasieu Sheriff Departments were not called as witnesses and no department reports were filed in evidence. References are made to videotaped sessions with the minor child, however, the video tapes are not found in the record. The trial judge referred to a statement made by Dr. Jalah Joudel, the emergency room physician, however, Dr. Joudel was not available for examination at trial concerning his physical findings.
The court did not have the report of Dr. Scott Bergstedt, who performed an extensive physical exam of the child. It is not clear whether this report, dated October 26, 2001, was obtained by C.S.A.’s attorney prior to the November hearing. In any case, neither Dr. Bergstedt’s testimony nor his report were considered by the court in making the determination. Additionally, the report of Dr. Terry Moody, the child’s treating psychologist, dated September 15, 2001, contradicts the report of Dr. Simoneaux; however, it too, was not considered nor was Dr. Moody called to testify.
Most significantly, we note the physical evidence in this case has never been fully explained, particularly the report of Dr. Scott Bergstedt. Moreover, the physical findings of Dr. Bergstedt that the child “was noted to have a healed hymenal tear at six o’clock position which is compatible with vaginal penetration at some point in her life” corroborates C.S.A.’s testimony in January 2001 that J.R.A. engaged in inappropriate behavior with his daughter during the marriage. This fact together with the fact that J.R.A. never specifically denied he engaged in inappropriate behavior with his daughter at the January or November hearings lend credence to C.S.A.’s allegations. C.S.A.’s observations regarding her child’s unusual behavior was _|j2Corroborated by Ms. Hyatt, the child’s third grade teacher, who testified as follows:
A. I observed her putting her hand inside the band of her skirt ... Her whole hand.
Q. Did she actually — Did you actually see her — see her reaching down to touch herself?
A. Yes.
Q. And was that going on in class?
A. That was going on in class.
*641 Additionally, Dr. Moody interviewed the minor child and made the following recommendations:
Given L.A.’s allegations of her father’s sexual behavior toward her and her expressed anger toward her father, it would be advisable that she continues to have limited and supervised visitation with her father.
Given L.A.’s level of depression, she should remain with her mother at the time and not be exposed to a disruption in her regular routine. This youngster needs consistency and she needs to feel that the environment where she is living is safe and free from parental abuse or the potential for parental abuse.
We have examined the excluded evidence and find it sufficient, at the very least, to raise serious concerns about the child’s best interest and continued placement in the father’s sole custody.
It appears from the record, C.S.A.’s defiance of court orders and her unwillingness to cooperate with her own attorney tipped the scales in favor of a judgment awarding sole custody to J.R.A. However, there were no allegations that C.S.A. was an unfit or abusive mother and we find from the record, C.S.A.’s concerns are not bizarre, outrageous or without any factual basis. The choice she made to secret her daughter in defiance of the court’s order was motivated by a desire to protect her from harm. Her poor judgment was not so detrimental to the child’s best interest that she should be banned from ever bringing to the court’s attention material evidence, though belated in presentation, that directly speaks to the father’s continued fitness to act as sole custodian of the child. In Smith v. Smith 615 So.2d 926 (La.App. 1 Cir.1993), the appellate court reversed the judgment of the trial court | iaconcluding the trial court gave “undue weight” to the mother’s poor judgment. The court stated:
Custody should not be changed when to do so would punish a parent for past behavior when there is no proof of a detrimental effect on the children. Interference with visitation alone is not a sufficient reason to change custody absent a showing of a detrimental effect on the children. An award of custody is not a tool to regulate human behavior.
Smith, 615 So.2d at 934.
Neither are we convinced, by the record evidence, that C.S.A.’s judgment is so clouded by hatred of her ex-husband that her parental rights to seek future medical care for her daughter should be permanently revoked or conditioned on the father’s permission. No evidence was presented which might even remotely suggest C.S.A. somehow caused her daughter’s physical injuries — -the hymenal tear compatible with vaginal penetration which Dr. Bergstedt concluded was an “old injury” and the more recent rectum tear and abraded area in the vaginal orifice found by Dr. Jalah after the child’s unsupervised visit with the father.
DECREE
Based on the foregoing, we reverse the judgment of the trial court excluding relevant evidence and remand for a custody hearing and for a determination regarding appointment of independent counsel for the minor child. All costs are assigned to J.R.A.
REVERSED and REMANDED.