689 So.2d 674 (1997)
Shane Paul BERCEGEAY
v.
Ashley Strawbridge BERCEGEAY.
No. 96 CA 0516.
Court of Appeal of Louisiana, First Circuit.
February 14, 1997.
James D. Thomas, II, Baton Rouge, for Plaintiff-Appellee Shane Paul Bercegeay.
Pamela Baker, Baton Rouge, for Defendant-Appellant Ashley Strawbridge Bercegeay.
Before LeBLANC, WHIPPLE, FOGG, PITCHER and FITZSIMMONS, JJ.
FITZSIMMONS, Judge.
In December, 1994, Mr. Shane Bercegeay filed a petition for temporary restraining order and for modification of custody to prevent the defendant, Mrs. Ashley Strawbridge Bercegeay (currently Mrs. Ashley Langford,), *675 from removing their child from the jurisdiction of East Baton Rouge parish. Mr. Bercegeay also sought to be designated as the primary custodial parent. On May 3, 1995, the family court judge ruled that the prior decree of joint custody would not be changed; however, he designated Shane Paul Bercegeay as the domiciliary parent and terminated child support.
Mrs. Langford has appealed the trial court ruling, asserting the following assignments of error:
1. The trial court erred in finding that Ashley Langford's intrastate move was per se a material change in circumstances that would materially affect the minor child's welfare, without further evidence.
2. The trial court erred in failing to require Shane Bercegeay, as the moving party seeking to change the custodial arrangement, to prove a material change in circumstances that would materially affect the minor child's welfare.
3. The trial court erred in failing to require Shane Bercegeay to show that the proposed change in domiciliary custody was in Blake's best interest.
4. The trial court erred in finding that the change in domiciliary custody was in Blake's best interest when his mother is a full time homemaker and his father's employment allows for very little time with the child.
5. The trial court erred in fixing a custody plan which makes the mother a "mere visitor" in the child's life.
We affirm the decision of the trial court on all assignments of error, with the exception of the fifth assignment of error. The decision relative to the single issue of the visitation implementation plan is reversed and remanded.

Facts
On January 9, 1990, the parties in the matter before us were divorced. Joint custody was awarded by stipulation of the parties. The exchanges of their child, Blake, were by agreement and arrangement between the parties. Medical and significant matters concerning the care and well-being of the minor child were also decreed to be jointly determined between the parties. Additionally, the district court ordered Mr. Shane Paul Bercegeay to pay $350 per month in child support to Ashley Bercegeay.
In 1993, Mrs. Bercegeay filed a rule to show cause why she should not be designated the domiciliary parent. This issue was apparently resolved after the parties conferred with a psychologist. Thereafter, however, Mrs. Bercegeay was remarried (assuming the name of Mrs. Langford) and relocated her home to Mandeville, Louisiana, a distance of approximately 70 miles from the location of Mr. Bercegeay.
The testimony presented at the family court hearing revealed that Mr. Bercegeay had been remarried to Michelle Guidry Bercegeay on September 9, 1994, approximately 8 months prior to the hearing. According to Michelle Bercegeay, his second wife, and Blake's stepmother, Mr. Bercegeay's employment demands at that time prevented him from arriving home until after 8:00 P.M., approximately 2 out of 3 weeknights. The child, like many other children in this day and time, attended daycare each day after school. Michelle Bercegeay testified that she performed the duties of a typical mother: assisting in dressing Blake, homework, feeding, bathing, transporting to game practices, etc. Mr. Bercegeay added that Michelle's mother picks Blake up when Michelle's routine rotating work schedule prohibits her from doing so. Additionally, because as of the date of the hearing, Mr. Bercegeay worked Saturdays, Blake spent that time with his step-mother, his step-mother's sister and three daughters, or Mr. Bercegeay's sister.

Law
The original joint custody decree was not a "considered decree" because it was entered by consent of the parties. We have previously recognized in Mosely v. Mosely, 499 So.2d 106, 108 (La.App. 1st Cir.1986), writ denied, 505 So.2d 1138 (La.1987), that the burden to demonstrate change of circumstances is distinct from the heavy burden of proof rule for modification of custody. However, the party moving for any alteration of *676 the custodial arrangement must demonstrate to the court that there has been both a material change of circumstances since the original custody decree and that the proposed modification is in the best interest of the child. Hensgens v. Hensgens, 94-1200 (La.App. 3rd Cir. 3/15/95); 653 So.2d 48, 52; writ denied, 95-1488 (La.9/22/95), 660 So.2d 478. The "best interest of the child" is the overriding test in all cases. La. C.C. art. 131.
An intrastate move by one of the parents is not per se sufficient criterion to establish a change of circumstance. On the other hand, the fact that both parents and Blake's teacher[1] suggested that it would be in Blake's best interest to change school settings to a more disciplined environment, may present a material change in circumstances. Chandler v. Grass, 600 So.2d 852, 855 (La. App. 3rd Cir.1992).
Joint custody does not necessarily mean a fifty-fifty sharing of time. Swope v. Swope, 521 So.2d 656, 659 (La.App. 1st Cir. 1988). The distance between the parents inherently tends to prevent an equal sharing of physical custody where the child is of school age. The courts have been willing to "split the child" only when the parents live a short distance from one another and the child is not required to attend different schools. Swope, 521 So.2d at 659. Thus, this court found that the trial court did not abuse its discretion when it terminated the alternating schedule of visitation weeks during the school year.
The trial court also properly referred to Louisiana Civil Code article 131, which emphasizes the "best interest of the child" in a child custody determination. Thereafter, in open court, the court reviewed each of the 12 non-exclusive factors delineated in Louisiana Civil Code article 134. Specifically, the trial judge found both parents to be loving, capable and caring; to have the same capacity and disposition to give the child love, affection and other emotional needs and ties; to give the child spiritual guidance, albeit in different ways; to be capable and disposed toward rendering food, clothing, and shelter; to have approximately the same physical and mental health; to have demonstrated comparable willingness and ability to facilitate and encourage a close and continued relationship between the child and the other party; to be morally fit; and to have shared responsibility for the care and rearing of the child. The court found that the child's preference was not a factor in the instant matter. The court additionally considered other determinants pursuant to La. C.C. art. 134: the length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment; the permanence, as a family unit, of the existing or proposed custodial home; the home, school, and community history of the child; and the distance between the respective residences of the parties.
Every child custody case involves its own peculiar set of relationships of the parties involved and their surroundings. The list of factors provided in La. C.C. art. 134 is non-exclusive and is intended only "to provide guidance for the courts." Turner v. Turner, 455 So.2d 1374, 1377 n. 2 (La.1984); See also La. C.C. art. 134, revision comments, (a). The trial judge, who is in the best position to ascertain "the best interest of the child" given each unique set of circumstances, is accorded great weight in his/her decision, which will not be overturned absent a manifest abuse of discretion. Thompson v. Thompson, 532 So.2d 101, 101 (La.1988); McKinley v. McKinley, 25-365 (La.App. 2nd Cir. 1/19/94) 631 So.2d 45, 49.
In the matter sub judice the judge reviewed the factors enumerated in La. C.C. art 134 and reached a decision that domiciliary custody should be vested in the father. The basis for his decision focused on the stability of the child, which in this case he equated to the best interest of the child. The trial court noted in the oral reasons for judgment that the child has been living longer in Baton Rouge, most of the relatives of each parent were close by, and the child's *677 friends were located there. The father has been living in the same house since 1989. The alternative proposition would require that the child be uprooted from his known surroundings in Baton Rouge and be moved to a new location 70 miles away. The child would have to adjust to a new school surrounding, new friends near home, along with a new relationship with a step-father.
It is quite important to remember that the trial court in a domestic case stands as "a witness of the witnesses." Thus, the numberless perceptions derived from the judge's senses about the facts result from the impact of the words, gestures, postures and grimaces of the witnesses. These perceptions play a critical part in the formation of a judgment. It is that judgment, when it is based on the "best interest of the child" and not the relative status (whether that of a working mom or dad), that lends the litigants the foundation of predictability. See Swope v. Swope, 521 So.2d at 658. Justice Oliver Wendell Holmes long ago put this principle forward in one clear statement: "[T]he prophecies of what the courts will do in fact, and nothing more pretentious, is what I mean by the law." Oliver W. Holmes, The Path of the Law, Collected Legal Papers, 173 (1920). It should be underscored that the trial judge had all the facts before him, including the financial status of both parents. He knew that the father was the personification of the average working man who toiled at a job that required late hours; he was aware that the mother's new husband was financially able to alleviate the mother's need to work. The court, in its discretion, determined that this particular child needed the stability of familiar surroundings and, because both parents were loving and attentive, ruled so as not to disrupt the child's setting. The decision of the trial court focused, not on the parents, but on "the child" and his "best interest." There has been no demonstration of abuse in the judge's discretionary determination that this individual child's emotional needs would be best served by remaining in Baton Rouge with the father as the domiciliary parent.
There has, however, been an abuse of discretion in the court's failure to follow the spirit of the interrelated La. R.S. 9:335 A.(2)(b). That provision advances that in a joint custody decree, "[t]o the extent it is feasible and in the best interest of the child, physical custody of the [child] should be shared equally." Additional language within that same article specifically emphasizes that in the implementation order the non-domiciliary parent "shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents." La. R.S. 9:334 B. (2). "This court has been willing to `split the child' only when the parents live a short distance from one another and the child is not required to attend different schools"; however, when it is feasible and in the "best interest of the child," physical contact with the child by the non-domiciliary parent should be allowed to be shared with the domiciliary parent. Swope v. Swope, 521 So.2d at 659.
This court notes that remand of a case such as this one is not a new precedent. Swope specifically remanded a custody matter to the district court. Judges of this circuit felt that such an important decision should not be made on a "stale record." Swope v. Swope, 521 So.2d at 660. Thus, in accordance with the guidelines precedent in Swope,[2] the implementation plan is remanded to the district court to review the custody implementation plan so that it is equitable for both parents but conditioned by the "best interest of the child" at issue.
AFFIRMED AND REMANDED.
WHIPPLE, J., dissents and assigns reasons.
WHIPPLE, Judge, dissenting.
I respectfully dissent. It is clear from the record that the trial court erroneously assigned greater weight to maintaining the status quo of the child's surroundings and neighborhood than it did to the personal attention that could be provided by one of *678 the joint custodial parents, i.e., Mrs. Langford.
In the present case, Mr. Bercegeay was seeking a modification of custody to be designated as the primary custodial parent. Because joint custody had previously been awarded by stipulation of the parties, Mr. Bercegeay was required to prove that there had been a change in circumstances materially affecting the welfare of the child and that the modification proposed by him is in the best interest of the child. Smith v. Smith, 615 So.2d 926, 931 (La.App. 1st Cir.), writ denied, 617 So.2d 916 (La.1993). He failed to do so.
The record before us demonstrates that Mrs. Langford does not work outside of the home, whereas Mr. Bercegeay works until 8:00 p.m. two or three nights a week in addition to working on Saturdays. Thus, under the modification suggested by Mr. Bercegeay, Blake must remain in after-school child care until at least 5:00 p.m. each evening, while his mother stands ready and willing to provide this care for him after school. Importantly, the record demonstrates that Mrs. Bercegeay has traditionally and historically been the parent who primarily provided care for Blake. Based upon these facts and the record as a whole, Mr. Bercegeay failed to establish that the modification proposed by him, designating him as the primary custodial parent, is in Blake's best interest. Instead, the practical and realistic effect of the trial court's judgment is to allow the child's stepmother and her collateral relations, all of whom are legal strangers to this child, to provide the care and custody which the mother has previously provided with no showing except that the mother stands willing and able to continue to love and care for her child, and to provide the care which will instead be provided by daycare employees and step-relations. The real effect of this judgment and the majority's affirmance of the trial court's error is to allow a scheduling convenience to the father to prime the mother's legal right to nurture and care for her child.
I respectfully disagree with the majority's decision and would render judgment, reversing the trial court's change of domiciliary parent from Mrs. Langford to Mr. Bercegeay. Thus, I would remand for implementation of a joint custody plan to provide for reasonable visitation privileges in favor of Mr. Bercegeay and for related issues of support obligations. See Smith, 615 So.2d at 935. For these reasons, I respectfully dissent.
NOTES
[1] Blake's school teacher, Mrs. Shapiro, advised that, although Blake was anxious about leaving his current school, in her opinion Blake needed to change from the loose structure of the Montessori school system to a more disciplined environment.
[2] Perhaps the legislature should enact legislation that would provide for expedited appeals in child custody matters.