722 So.2d 54 (1998)
Lori Lynne Wren RANEY
v.
Jason Christopher WREN.
No. 98 CA 0869.
Court of Appeal of Louisiana, First Circuit.
November 6, 1998.
Rehearing Denied December 11, 1998.
*55 Jeffrey S. Wittenbrink, Baton Rouge, for Plaintiff/Appellant Lori Lynne Wren Raney.
Karen D. Downs, Baton Rouge, for Defendant/Appellee Jason Christopher Wren.
Before GONZALES, KUHN and WEIMER, JJ.
WEIMER, J.
This is an appeal by the plaintiff, Lori Lynne Wren Raney, from a judgment awarding joint custody of the minor child, Jessica, to her and Jason Christopher Wren. Mr. Wren was designated as the domiciliary parent. We affirm.

FACTS AND PROCEDURAL HISTORY
The parties were married on January 19, 1988. One child, Jessica Wren, was born of the marriage on July 15, 1988. The parties physically separated in August of 1993, at which time Mrs. Raney decided to move from Baton Rouge, Louisiana, to Monroe, Louisiana, to be close to her family. According to Mr. Wren, he allowed Mrs. Raney to take Jessica with her to Monroe. Mrs. Raney moved back to Baton Rouge in March of 1994, at which time Jessica remained in Monroe with her grandparents and finished kindergarten. After completing school, Jessica moved back to Baton Rouge, and according to Mr. Wren, spent more time with him than with her mother because of Mrs. Raney's work schedule. Thereafter, on December 16, 1994, a judgment of divorce was rendered and by consent of the parties, they were awarded joint custody of Jessica, with Mr. Wren designated as the domiciliary parent. Mrs. Raney was awarded unrestricted visitation.
Mrs. Raney remarried in March of 1995, and subsequently moved to California with her new husband, Robert Raney, in November of 1995. On December 12, 1995, Mrs. Raney filed a Petition for Change of Custody *56 in which she alleged that she had been Jessica's primary caregiver since the child's birth. She further alleged that since her move to California she was only working part-time and that her new living and working conditions constituted a change in circumstances making her better able to care for Jessica on a full-time basis. After Mrs. Raney filed the Petition for Change of Custody, she and her husband moved to Virginia, which is where they were residing at the time of the hearing on this matter.
Mr. Wren filed an Answer and Reconventional Demand in which he alleged that he had been the primary caregiver of Jessica and that Mrs. Raney had not been actively involved in Jessica's life for the last several years. He further alleged that Mrs. Raney's remarriage and move to California was a change in circumstances and that he was entitled to sole custody. In an amended petition, Mrs. Raney alleged that Mr. Wren had a "history of family violence" as defined in LSA-R.S. 9:361, et seq., and that he had an unhealthy attraction to pornography. Furthermore, Mrs. Raney requested that the parties undergo a psychological evaluation. In a stipulated judgment, Dr. Alan Taylor was appointed by the trial court for the testing and evaluation of the parties and Jessica.
This matter was heard by the trial court on February 5, 6, and 7, and June 4, 5, 6, and 20, 1997. After hearing all of the evidence in this case, the trial court rendered judgment awarding the parties joint custody of Jessica, with Mr. Wren designated as the domiciliary parent. It is from this judgment that Mrs. Raney now appeals.
Mrs. Raney has assigned eight specifications of error relative to the trial court's limiting evidence to facts occurring after the original custody decree; the trial court's refusal to allow Jessica to testify other than to state her preference as to domicile (to which Mr. Wren was willing to stipulate); the trial court's ruling that the best interest of the child would be served by maintaining domiciliary parent status with Mr. Wren; and the trial court's allowing expert testimony on the mental health of the parties based solely on certain diagnostic test scores and favoring that testimony over a custody evaluation performed by the court's independent psychological expert.

MODIFICATION OF CUSTODY
When a trial court has made a considered decree of permanent custody, the party seeking a change in custody bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986). However, where no considered decree of custody has been rendered, the "heavy burden" rule of Bergeron does not apply. If a prior award of custody has been made by consent decree, the party seeking a change in custody must prove that a change in circumstances materially affecting the welfare of the child has occurred since the original decree. The proponent for change must also show that the proposed modification of custody is in the best interest of the child. Connelly v. Connelly, 94-0527, p. 4 (La.App. 1 Cir. 10/7/94), 644 So.2d 789, 793.

STANDARD OF REVIEW
Every child custody case must be viewed within its own peculiar set of facts. Connelly, 94-0527 at 4, 644 So.2d at 793. The trial judge is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Thompson v. Thompson, 532 So.2d 101, 101 (La.1988)(per curiam); Bercegeay v. Bercegeay, 96-0516, p. 5 (La.App. 1 Cir. 2/14/97), 689 So.2d 674, 676.
In the instant case, as in most custody cases, the trial court's determination was based heavily on factual findings. The Louisiana Supreme Court developed a two part test for reviewing factual issues on appeal in Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). According to the test, appellate *57 courts may not disturb factual findings unless:
1. The appellate court finds from the record that a reasonable factual basis for the finding of the trial court does not exist, and
2. The appellate court determines that the record establishes that the finding is clearly wrong (manifestly erroneous).
Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
The Supreme Court has promulgated some general principles for appellate courts to follow when determining whether factual findings are "clearly wrong." One general principle concerns the credibility of witnesses. When factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Credibility determinations may be clearly wrong when "documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story...." Stobart, 617 So.2d at 882; Rosell, 549 So.2d at 844-845. However, absent contradictory evidence or inconsistent or implausible statements, it is "virtually never" clearly wrong for the fact finder to accept one witness's version of the facts over another. Rosell, 549 So.2d at 845.

EXCLUSION OF EVIDENCE

(Assignments of Error Nos. 1, 2 & 3)
In these assignments of error, Mrs. Raney contends that the trial court erred "by limiting the evidence presented in this case to facts occurring after December 16, 1994, on the grounds that such evidence is irrelevant." In support of her position, Mrs. Raney cites Smith v. Smith, 615 So.2d 926 (La.App. 1 Cir.), writ denied, 617 So.2d 916 (1993). After a review of the record as a whole, we conclude that the facts in Smith are clearly distinguishable from the facts in the instant case. For the following reasons, we agree with the trial court's decision to exclude evidence of acts prior to the consent judgment.
In Smith, the parties entered into a consent judgment whereby the parties were granted joint custody of their two minor children with the mother being designated as the primary custodial parent. Smith, 615 So.2d at 928-929. Later, Mr. Smith filed a rule for change of custody seeking sole custody of the children on the basis that Mrs. Smith had relocated to Indiana with the children without giving him prior notice of the move. The trial court excluded testimony offered by Mrs. Smith as to verbal and physical abuse by Mr. Smith during their marriage. Mrs. Smith sought introduction of this evidence "to show that she was justified in moving to Indiana without notifying Mr. Smith." In its reasons for judgment, the trial court characterized Mrs. Smith's actions as impulsive and stated that it was "outraged" that she had moved out of state without notifying Mr. Smith. The court further found that Mrs. Smith's alleged fear of Mr. Smith did not justify her actions. Smith, 615 So.2d at 930. The trial court then rendered a judgment which modified the previous custody decree by changing the domiciliary parent from Mrs. Smith to Mr. Smith.
On appeal, this court concluded that the trial court erred in excluding certain evidence of acts occurring prior to the consent judgment. This court noted:
Whether evidence is relevant or not is within the discretion of the trial court, and its ruling will not be disturbed absent a clear abuse of discretion. However, application of the change in circumstances rule to this case does not automatically preclude the introduction of all evidence of facts occurring prior to the stipulated custody judgment. The trial court should not exclude evidence in a custody modification proceeding if that evidence is relevant and material to an issue which the parties have not previously had "a full and fair opportunity to litigate". Smith, 615 So.2d at 931 (citations omitted).
After considering the entire record, including the proffered testimony of both parties, this court reversed the trial court's judgment and *58 reinstated the previous judgment which had awarded the parties joint custody with Mrs. Smith as the domiciliary parent.
In the instant case, Mrs. Raney sought to introduce evidence that Mr. Wren had a "history of family violence" within the meaning of LSA-R.S. 9:361, et seq., the PostSeparation Family Violence Relief Act. In brief, Mrs. Raney contends that she is entitled to the statutory presumption created in LSA-R.S. 9:364 A.[1] Mrs. Raney further alleged that she signed the original consent judgment only because of Mr. Wren's abusive behavior and threats. Following an objection to the relevance of this evidence, the trial court ruled that while evidence of acts occurring prior to the original custody decree was not admissible, it could be proffered by the parties. The court's ruling was also based on Mrs. Raney's failure to properly plead facts which occurred prior to the December 16,1994, custody decree.
For evidence of facts occurring before a stipulated judgment to be admissible, the evidence must meet the criteria of relevance and the balancing test as set forth in the Louisiana Code of Evidence. See LSA-C.E. arts. 401-403. Whether evidence is relevant is within the discretion of the trial court, and its ruling will not be disturbed on appeal absent a clear abuse of discretion. Smith, 615 So.2d at 931. We must assume that the trial court applied the appropriate balancing test in determining the relevancy of the evidence in this case.
Mrs. Raney relies on Smith for the proposition that evidence of facts occurring prior to a stipulated custody judgment should be considered in a subsequent custody hearing. However, just as courts should not automatically exclude evidence of pre-consent judgment conduct, courts should not automatically admit the evidence. To introduce evidence of facts which occurred prior to a consent decree, the evidence must be relevant and material. However, even relevant evidence of facts occurring prior to the consent decree should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues or considerations of undue delay or waste of time. LSA-C.E. arts. 401-403. The fact that a considered decree was executed, and the time that has elapsed since its execution, are factors to consider in determining the admissibility of the evidence. To hold otherwise would result in litigation of issues pre-dating the consent decree no matter how far removed in time. The trial court must make this evidentiary determination on a case by case basis and should articulate its reasons why the evidence was admitted or excluded.
We have evaluated the testimony found in the proffers and conclude that the evidence involves a swearing contest between the parties. A thorough review of the record in this case indicates that the evidence does not support Mrs. Raney's allegations of violence on the part of Mr. Wren. Given the length of time between Mrs. Raney's complaints and the original consent decree, and other factors such as her conduct after the consent decree, Mrs. Raney's allegations are suspect.[2]
Mrs. Raney testified that she and Mr. Wren had a very amicable separation. In fact, during the summer prior to her move to California, she indicated that they "start[ed] communicating a lot more" and tried to "show Jessica that in her presence [they] were both okay with each other and that [they] could get along with each other." She testified that she "had no problem going to his [Mr. Wren's] house" and "no problem spending time with him [Mr. Wren] and Jessica." Mrs. Raney also admitted to spending the night at Mr. Wren's house on two occasions.
We have carefully considered the record and find no abuse of discretion by the trial court in refusing to admit the evidence of acts prior to the consent decree.

*59 TESTIMONY OF CHILD

(Assignments of Error Nos. 4, 5 & 6)
A review of the record in this case reveals that Jessica did not testify at the custody hearing. Mrs. Raney contends that the trial court erred by limiting Jessica's testimony to that of her preference as to domicile, in that the record contained expert testimony and evidence establishing Jessica's competence, intelligence, willingness, and need to testify. The parties stipulated to Jessica's preference as to domicile, i.e. that she would rather live with her mother.
According to the record, Jessica was called as a witness by counsel for Mrs. Raney. However, she was only asked a few questions before counsel for Mr. Wren interjected concerns regarding Jessica testifying. Argument by counsel for both parties was then heard by the trial judge, who ultimately determined that it was in the child's best interest to limit Jessica's testimony to her preference as to domicile.[3] Later in the record, counsel for Mrs. Raney requested that the court interview Jessica. However, this request was denied by the trial court.
The admission of the testimony of a child of tender years is a matter which addresses itself to the sound discretion of the trial court. Wilson v. Moser, 210 La. 1021, 29 So.2d 49, 50 (1946). However, a court cannot exclude a child's testimony based solely on the premise of protecting the child. Id. at 49. While there are no specific provisions in the Louisiana Code of Civil Procedure or the Louisiana Code of Evidence that address the testimony of children,[4] we do have jurisprudential guidance.
In the case of Watermeier v. Watermeier, 462 So.2d 1272, 1275 (La.App. 5 Cir.), writ denied, 464 So.2d 301 (1985), the court established guidelines for taking the testimony of children in a custody dispute:
[T]he interview must be conducted in chambers outside of the presence of the parents, but in the presence of their attorneys, with a record being made by the court reporter. The judge shall first determine [the child's] competency as "a person of proper understanding" by interrogating the child with appropriate questions. The attorneys shall be allowed to participate in the competency examination by asking questions and registering appropriate but only necessary objections. If the judge determines that the child is not a competent witness as outlined above, [the judge] shall immediately terminate the interview.
However, if the judge determines that the child is competent, ... the interview [may continue] in the presence of the attorneys as observers only. They shall not participate by asking questions, or cross-examining or registering objections, as we deem this would upset, distract and possibly intimidate the child to a degree that would undermine [the child's] willingness to give any useful information.[5]
These guidelines have been cited with approval and adopted by this court in In re Custody of Landry, 95-0141, p. 7 (La.App. 1 Cir. 10/6/95), 662 So.2d 169, 173 and Diggs v. Tyler, 525 So.2d 1263, 1265-1266 (La.App. 1 Cir.1988).
There is nothing in the record to indicate that the trial court followed these guidelines. While Jessica's brief testimony was elicited during a closed hearing, presumably outside of the presence of her parents,[6] her competency was not evaluated by the trial court. Rather, counsel for Mrs. Raney was allowed to question Jessica. Jessica was first questioned regarding her understanding *60 of the truth and then asked a few questions about her mother. The trial court never questioned Jessica to determine if she had sufficient understanding to testify, but rather limited Jessica's testimony to that of her preference as to domicile, stating that it was "in the child's best interest" to limit her testimony.
The trial court did not follow the jurisprudentially created guidelines for taking the testimony of a child in a custody dispute. The record contains evidence to indicate that Jessica was in fact competent to testify and the trial court made no finding that she was incompetent to testify. Although a trial court has great discretion regarding the admission of a child's testimony, in this case the trial court's exclusion of Jessica's testimony was erroneous in light of Wilson, Landry, and Diggs.
Having found an error in the trial court's ruling, we must determine if the error is prejudicial to the case. LSA-C.E. art. 103. In reaching this decision, we must consider whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case. Brumfield v. Guilmino, 93-0366, p. 12 (La.App. 1 Cir. 3/11/94), 633 So.2d 903, 911, writ denied, 94-0806 (5/6/94), 637 So.2d 1056. We have reviewed the entire record de novo, including the proffer by Mrs. Raney and the counter proffer by Mr. Wren. We conclude that Mrs. Raney has failed to show how the error by the trial court in excluding Jessica's testimony had a substantial effect on the outcome of the case. The evidence contained in the proffers regarding what would have been Jessica's testimony had she been called as a witness indicated that the swearing contest between the parties persisted.

BEST INTEREST OF CHILD

(Assignment of Error No. 7)
In this assignment of error, Mrs. Raney contends that the trial court erred in ruling that the best interests of Jessica would be served by maintaining domiciliary parent status with Mr. Wren. For the reasons that follow, we find this assignment of error to be without merit.
The best interest of the child is the paramount consideration to be applied in all custody determinations. LSA-C.C. art. 131. In determining the best interest of a child, the court shall consider all relevant factors which may include: (1) the love, affection, and other emotional ties between each party and the child; (2) the capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child; (3) the capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs; (4) the length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment; (5) the permanence, as a family unit, of the existing or proposed custodial home or homes; (6) the moral fitness of each party, insofar as it affects the welfare of the child; (7) the mental and physical health of each party; (8) the home, school, and community history of the child; (9) the reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference; (10) the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party; (11) the distance between the respective residences of the parties; and (12) the responsibility for the care and rearing of the child previously exercised by each party. LSA-C.C. art. 134.
In written reasons for judgment, the trial court stated in part:
The Court finds that neither parent is unsuitable. The mother has recently married and has moved out of state. The father has cared successfully for their daughter for a lengthy period of time in a stable environment. His schedule is flexible, enabling him to be with his daughter as needed.
....
Considering the entirety of the record, the credibility and demeanor of the witnesses, particularly the parties, the Court will award joint custody with Mr. Wren being designated as the primary domiciliary parent. (Emphasis added.)
*61 During the trial of this matter, the trial court heard from the parties, various fact witnesses, and three psychologists. It is important to remember that the trial court in a domestic case stands as "a witness of the witnesses." Bercegeay, 96-0516 at 5, 689 So.2d at 677. As indicated in the written reasons for judgment, the trial court considered several factors in making its final determination, and the resulting award of custody will not be reversed on appeal absent a clear abuse of discretion. Thompson, 532 So.2d at 101. The trial court's conclusions were obviously based on determinations regarding the credibility and demeanor of the witnesses, particularly the parties, which must be afforded great deference on appeal. Rosell, 549 So.2d at 844. The trial judge was in a position to evaluate the witnesses' variations in demeanor and tone of voice, as compared with our access only to a cold record. Id.
Mrs. Raney argues that "if the evidence of the developmental needs of [Jessica] are not refuted, and neither party is unsuitable, these facts[,] combined with the stipulation by [Mr. Wren] that [Jessica] wishes to be with her mother[,] should carry [her] burden of proof." Mrs. Raney must prove that a change in circumstances materially affecting Jessica's welfare has occurred since the original consent decree was signed and that the modification proposed is in Jessica's best interest. See Connelly, supra. In addition to the above, Mrs. Raney, as a parent seeking to remove her child from the court's jurisdiction, must show: (1) that there is a good reason for the move, and (2) that the move is in the child's best interest. Day v. Day, 97-1994, p. 3 (La.App. 1 Cir. 4/8/98), 711 So.2d 793, 795. It is undisputed that Mrs. Raney's move constituted a change in circumstances. It is also clear that there was a good reason for Mrs. Raney's move. Thus, the question that remains is whether the move is in Jessica's best interest.
While the child's preference as to domicile is certainly a factor to be considered by the trial court in a custody determination, so too is the stability of environment. Although both parties are generally shown to be good and loving parents, the totality of the circumstances favors Mr. Wren. He has provided a stable environment for Jessica and successfully cared for her since the original consent decree was signed. In contrast, Mrs. Raney has left Louisiana, relocated twice over the past few years, and is not certain that she will permanently reside in Virginia as her husband is in the Navy and may be transferred to another command. As noted by this court in Day, stability of environment and the desirability of maintaining continuity of that environment are important factors to be considered in a custody dispute. Day, 97-1994 at 6, 711 So.2d at 796. Absent a compelling reason, a change from a stable environment should not be made. Id.
In the instant case, the trial court considered the lay and expert testimony and determined that it was in Jessica's best interest to remain with her father in the stable environment which he has provided. Review of the record reveals no reversible error. We find that the trial court's credibility determinations are not clearly wrong. Each case must be evaluated based on its own particular facts and circumstances by weighing and balancing the factors enumerated above. After carefully examining the evidence in this case, we cannot say the trial court abused its discretion in awarding the parties joint custody with Mr. Wren designated as the domiciliary parent.

EXPERT TESTIMONY

(Assignment of Error No. 8)
In this final assignment of error, Mrs. Raney asserts that the trial court erred by allowing expert testimony by Dr. Carey Rostow on the mental health of the parties based solely on their Minnesota Mutiphasic Personality Inventory-2 (MMPI-2) test scores.[7] She further contends that it was error for the trial court to favor Dr. Rostow's testimony over the custody evaluation performed by Dr. Alan Taylor, the court appointed psychological expert.
*62 According to the record, Dr. Rostow, a clinical psychologist, testified as an expert witness on behalf of Mr. Wren. Dr. Rostow indicated that he had reviewed the custody assessment prepared by Dr. Taylor as well as the MMPI-2 tests that were administered to both Mrs. Raney and Mr. Wren. He testified that he has been using the MMPI tests since 1972. However, Dr. Rostow indicated that in a custody evaluation, he felt the MMPI test must be administered with more than just an interview.[8] Dr. Rostow testified that the MMPI test should be accompanied by not only an interview, but also with other standardized tests.
While Dr. Rostow was asked questions about the MMPI-2 test scores for both Mr. Wren and Mrs. Raney, he was never asked to comment on the mental health of the parties. Furthermore, Dr. Rostow was never asked to give a recommendation as to custody. Rather, he was simply used as an expert witness to testify about the MMPI-2, and his experiences regarding the use of this test in custody cases.[9]
As previously indicated, Dr. Taylor was appointed by the trial court to evaluate the parties and prepare a custody evaluation. Dr. Taylor, who was qualified as an expert in the field of clinical psychology, testified at length about the testing process and his interviews with the parties. Marcia Cox, an expert in the field of social work, also testified about the case and her involvement in assisting Dr. Taylor in preparing the custody evaluation for the court. Dr. Taylor indicated that based on his assessment of the parties, he would recommend that Jessica live with her mother.
It is well settled in Louisiana that the trial court is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence. Fountain v. Fountain, 93-2176, p. 5 (La.App. 1 Cir. 10/7/94), 644 So.2d 733, 738. A trial court may accept or reject in whole or in part the opinion expressed by an expert. Id. Further, a trial judge may substitute his/her own common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole. Goodwin v. Goodwin, 618 So.2d 579, 586 (La.App. 2 Cir.), writ denied, 623 So.2d 1340 (1993); Galloway v. Gaspard, 340 So.2d 579, 583 (La.App. 1 Cir.1976).
We find no merit in Mrs. Raney's contention that the trial court erred in allowing expert testimony by Dr. Rostow. The trial court considered the testimony of all the witnesses. It weighed the evidence in light of the circumstances on which the expert testimony was predicated. We cannot say that the trial court's evaluation of the expert testimony and subsequent determination that Jessica's best interests would be best served by maintaining joint custody with Mr. Wren designated as the domiciliary parent was an abuse of its great discretion.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against plaintiff-appellant, Lori Lynne Wren Raney.
AFFIRMED.
GONZALES, J., concurs and assigns reasons.
GONZALES, J, concurring.
I respectfully concur. I agree with the result reached by the majority but write separately to express my views regarding the trial court's refusal to allow evidence of Mr. Wren's history of family violence.
Evidence of Mr. Wren's history of family violence is relevant in determining his fitness as the domiciliary parent of his daughter, *63 because evidence proving his alleged violent disposition tends to make his unfitness as a parent more probable. La. C.E. art. 401. This is true regardless of whether the alleged family violence occurred before or after the December 16, 1994 consent decree. The passage of time since the occurrence of the family violence is only one factor in determining relevancy. Therefore, the trial court erred in determining that evidence of Mr. Wren's violent disposition occurring before the consent decree was automatically irrelevant and inadmissible. Rather, the trial court should have admitted the evidence and then considered its remoteness in time to determine what weight it should be given.[1]
After determining the trial court erred in excluding the proffered evidence, this court must then determine whether the erroneous exclusion of the evidence affected a "substantial right" of Mrs. Raney. This inquiry is required by La. C.E. art. 103(A).
The majority opinion seems to indicate that it was error to exclude the proffered evidence regarding Mr. Wren's alleged history of family violence. If this is the case, the majority should simply say so. I believe it was error to exclude the proffered evidence. However, I also believe that the exclusion of the evidence did not affect a substantial right of Mrs. Raney, because the proffered evidence amounts to nothing more than a "swearing contest" between the parties, as the majority opinion indicates, and was not of sufficient weight to change the trial court's determination on the issue of Mr. Wren's fitness as the domiciliary parent of his daughter.
NOTES
[1] LSA-R.S. 9:364 A provides in part: "There is created a presumption that no parent who has a history of perpetrating family violence shall be awarded sole or joint custody of children."
[2] We note that the parties signed the consent decree of custody on December 16, 1994. Mrs. Raney did not leave for California until November of 1995. She waited almost an entire year from the date of the consent decree before seeking modification by filing a petition for change of custody on December 12, 1995.
[3] During the trial, Mrs. Raney sought supervisory review by this court on the issue of Jessica testifying. We declined to exercise our supervisory jurisdiction, indicating that Mrs. Raney should proffer the excluded evidence and seek review on appeal following a trial on the merits. Raney v. Wren, 97 CW 0588 (La.App. 1 Cir. 4/4/97).
[4] Louisiana Code of Evidence article 601 provides a general rule regarding witness competency.
[5] The quote has been amended to make it gender neutral.
[6] It is clear from the record that Mr. Wren was asked to leave the courtroom prior to Jessica's testimony. However, we are unable to determine if Mrs. Raney was present.
[7] According to Dr. Rostow, the MMPI-2 test is an objective personality test often administered in child custody cases to evaluate whether the party/parties seeking custody have the stability and character to perform in that capacity.
[8] Dr. Taylor testified that in addition to the administration of the MMPI-2 test, he had interviewed the parties prior to making his custody recommendation. However, he admitted that he did not administer any other tests to the parties.
[9] In written reasons for judgment, the trial court stated "Dr. Rostow found Mrs. Raney to be `in the dumps'." However, a review of the record reveals that this statement was taken somewhat out of context by the trial court. Dr. Rostow was asked the significance of the different test scores of the parties. He indicated that if a party has an elevated score for subjective depression, the party would tend to be "feeling sad, blue and in the dumps."
[1] I note that the trial court judge left the courtroom during the proffer of some of the challenged evidence. However, I think that when the objection to the evidence is lack of relevancy, the trial court judge should remain present during the proffer to see whether the offering party successfully establishes the relevancy of the evidence to the issues in the case; if relevancy is established, the trial court is then able to reverse its earlier ruling and allow the introduction of the evidence. If the trial court judge leaves during a proffer of evidence he has excluded based on a relevancy objection, he has no opportunity to correct his evidentiary ruling if it proves to have been erroneous.