730 So.2d 1070 (1999)
Lori Seavers TEMPLETON
v.
Roger H. TEMPLETON.
No. 98 CA 2503.
Court of Appeal of Louisiana, First Circuit.
April 1, 1999.
*1072 Deborah P. Gibbs, Baton Rouge, for Plaintiff/Appellant, Lori Seavers Templeton.
Donna Wright Lee, Baton Rouge, for Defendant/Appellee, Roger H. Templeton.
Before: CARTER, C.J., SHORTESS, and WHIPPLE, JJ.
CARTER, C.J.
This is an appeal from a judgment rendered in a rule to change custody. The trial court issued a temporary custody plan which awarded each parent equal custodial periods with their four-and-a-half-year-old daughter. The trial court took other matters under advisement, including the issuance of a permanent custody plan. Lori Seavers, the mother of the child, appealed.

FACTUAL AND PROCEDURAL BACKGROUND
Lori Seavers and Roger Templeton were married on December 30, 1989, in Georgia. While Ms. Seavers and Mr. Templeton were living in Natchitoches, Louisiana, their only child, Bethany, was born in Shreveport on November 13, 1993. When Bethany was approximately one and a half years old, the family moved to Baton Rouge because Mr. Templeton had accepted a job as a minister in the Methodist Conference Office. Subsequently, in the summer of 1996, Mr. Templeton accepted a position as the minister at the University United Methodist Church. As a requirement for his new position, the family moved into the church parsonage, where they lived together until their physical separation two months later in August 1996. Mr. Templeton officially left the family home in the parsonage in September 1996.
Ms. Seavers filed a petition for divorce on October 9, 1996. In this petition, Ms. Seavers sought joint custody of Bethany and the designation as domiciliary parent, subject to reasonable "visitation" rights by Mr. Templeton. On October 18, 1996, Mr. Templeton and Ms. Seavers entered into a stipulated judgment through which they were awarded joint custody of Bethany, with Ms. Seavers being named domiciliary parent. The stipulated judgment awarded Mr. Templeton "visitation" with Bethany one to two nights during the week; an additional evening during the week; weekends; and equally shared holidays. It further provided Mr. Templeton with two two-week custodial periods each summer if Ms. Seavers moved out of state. The judgment expressly provided:
[T]he parties have entered into this stipulation with the understanding and acknowledgment that [Ms. Seavers] may move with Bethany out of state, even as far as Minnesota or Wisconsin. It is agreed by the parties that [Ms. Seavers] has significant and valid reasons for making such a move, should she ultimately do so. It is stipulated and agreed that should [Ms. Seavers] move out of state, that such a move shall not constitute a change of circumstances for purposes of modifying this custody agreement since such a move is specifically contemplated. However, it is stipulated and agreed that if [Ms. Seavers] moves out of state, although custody and the domiciliary designation will not be modified, that the visitation may be modified.
On April 22, 1997, Mr. Templeton filed a Rule to Show Cause Why a Divorce Should Not Be Granted and for Other Incidental Matters. In the rule, Mr. Templeton alleged that Ms. Seavers had announced her intent to move to Minnesota in June 1997, and take Bethany with her, and that Mr. Templeton was not agreeable to Bethany being moved. Mr. Templeton sought sole custody or joint custody with him being named domiciliary parent. In either case, Mr. Templeton asked that Ms. Seavers be allowed reasonable "visitation."
A judgment of divorce was rendered May 13, 1997. Subsequently, on May 30, 1997, the parties entered into another stipulated judgment wherein they agreed that Mr. Templeton and Ms. Seavers would have joint custody of Bethany, with Ms. Seavers being the primary domiciliary parent. Mr. Templeton agreed to the following "visitation" schedule: 1) a three week period in May and June 1997; a two week period in December 1997/January 1998; two weeks in April/May 1998; a four week period in July/August 1998; three weeks in December 1998; three *1073 weeks in April 1999; and six weeks in the summer of 1999; and 2) liberal "visitation" with Mr. Templeton, including visits by Mr. Templeton to Minnesota and weekend visits by Bethany to Louisiana for observation of special events. The stipulated judgment stated that Mr. Templeton understood that Ms. Seavers would be moving with Bethany to Minnesota at the end of May 1997; and that the parties agreed to reassess this custody and "visitation" situation without showing a change of circumstances within one year.
On August 25, 1997, Ms. Seavers filed a Rule to Set Child Support. In response, Mr. Templeton filed an Answer to Rule to Set Child Support and Rule to Change Custody on September 29, 1997. In this answer and rule, Mr. Templeton sought to be named primary domiciliary parent. He also alleged that if he were named primary domiciliary parent, he would waive any request for child support from Ms. Seavers. However, approximately one month later, on November 13, 1997, Mr. Templeton obtained a new attorney and filed a Rule for Change of Custody. In this rule, Mr. Templeton alleged that he should be named primary domiciliary parent because 1) the distance makes it difficult for Mr. Templeton to exercise "visitation" with Bethany as frequently as outlined in the October 22, 1996 stipulated judgment;[1] and 2) Ms. Seavers and Bethany were living with Ms. Seavers' parents, including Ms. Seavers' father who had molested Ms. Seavers as a child. Alternatively, Mr. Templeton requested an award of fifty-fifty shared custody because Bethany was not yet of school age. Contrary to his assertion in the September 1997 rule for custody change, Mr. Templeton specifically requested child support from Ms. Seavers in the event he was named primary domiciliary parent.
On June 2, 1998, the trial court rendered judgment continuing the award of joint custody, but ordering the parties to alternate equal custodial periods of Bethany through August 1999. The judgment set forth an interim custody plan which placed Bethany with each parent in alternating three-month intervals. Thus, pursuant to the judgment, Bethany would spend three months with Mr. Templeton in Baton Rouge, then spend three months with Ms. Seavers in Minnesota, commencing June 1, 1998. This alternating equal custody plan was to continue through August 1999. The judgment further provided that the trial court would render written reasons on the domiciliary parent designation issue, as well as a custody plan to be effective after August 31, 1999; and would render written reasons as to the issues of child support and the community property partition. To date, the trial court has not rendered written reasons on any of these other matters.
Ms. Seavers appealed the June 2, 1998 judgment and moved for a stay of the judgment and an expedited hearing. Mr. Templeton opposed the motion. A panel of this court issued an order denying the stay request, but granting the motion for an expedited hearing. Subsequently, Mr. Templeton filed a motion to dismiss Ms. Seavers' appeal, contending that the June 2, 1998 judgment was not a final appealable judgment. Ms. Seavers filed a Motion to Reconsider Request for Stay and/or Motion to Vacate Judgment and/or Motion to Convert Appeal into Writ Application. This court issued orders referring these motions to the merits.

MOTION TO DISMISS
In his motion to dismiss, Mr. Templeton asserts that because the judgment did not grant all of the relief prayed for by the parties, it is a partial judgment. Accordingly, to be appealable as a final judgment, the requirements of LSA-C.C.P. art. 1915[2] had *1074 to be met, namely, the parties had to agree that the judgment was a final judgment or the court had to designate the partial judgment as a final judgment after expressly determining that there is no just reason for delay. Because neither of these requirements was met, Mr. Templeton sought to have the appeal dismissed.
We agree that the June 2, 1998 judgment was a partial judgment and thus, not a final appealable judgment. We further agree that none of the prerequisites contained in LSA-C.C.P. art. 1915 were met in this case to cause the partial judgment to be a final appealable judgment. Accordingly, we grant Mr. Templeton's motion to dismiss the appeal.
However, in the interests of justice, we will exercise our supervisory jurisdiction and review this non-appealable judgment by granting Ms. Seavers' motion to convert the appeal into an application for supervisory writs. We find this action to be necessary under these particular facts where a five-year-old child is being transported some 1300 miles between Minnesota and Louisiana every three months, resulting in a very unstable situation for the child. Accordingly, we will rule on the merits of the application.

ASSIGNMENTS OF ERROR
In her brief, Ms. Seavers asserts eight assignments of error, most of which pertain to the issue of whether the trial court erred in temporarily modifying the custody plan to give each parent an alternating three-month visitation period with Bethany. The eight assignments of error can be classified into three categories. The first category addresses the change in the custody plan. Ms. Seavers argues that the trial court erred in the fifty-fifty custody award between parents who live in Louisiana and Minnesota when there was no testimony that this plan was in Bethany's best interest and where the court had no reasonable factual basis to justify the fifty-fifty custody arrangement; the trial court applied incorrect legal principles; and the trial court effectively reversed the decision of the domiciliary parent to send Bethany to kindergarten. The second category of assignments of error addresses the trial court's decision to exclude the testimony and records of Mr. Templeton's mental health professional, which testimony would have impeached Mr. Templeton's credibility at trial. The final category addresses the trial court's failure to render a decision on the various matters that it took under advisement at the conclusion of the trial.

TEMPORARY MODIFICATION OF JOINT CUSTODY VISITATION PLAN
In the May 1997 stipulated judgment pertaining to the custody of Bethany, the parties expressly agreed to joint custody, with Ms. Seavers being designated as the primary domiciliary parent. Although Mr. Templeton subsequently filed two pleadings respectively entitled "Answer to Rule to Set Child Support and Rule to Change Custody" and "Rule for Change of Custody," Mr. Templeton did not seek to terminate the joint custody designation. Rather, he sought a change in the primary domiciliary parent designation and an attendant modification to the "visitation" schedule.
The trial court in this case expressly found that "joint custody is in the best interest of Bethany" despite the fact that neither Mr. Templeton nor Ms. Seavers was seeking sole custody of Bethany. However, the trial court took the actual contested issues under advisement, one of which was whether the primary domiciliary parent status of Ms. Seavers should be changed. Then, without deciding whether there should be a change in the designation of Ms. Seavers as primary domiciliary parent, the trial court ordered Bethany, who was four and a half years old at the time of the trial, to spend three months at a time with each parent, alternating visits between Louisiana and Minnesota. Compliance with this order meant that Bethany would be unable to complete the kindergarten program in Minnesota in which she had been enrolled. We must now decide *1075 if this constituted error on the part of the trial court.
Joint custody does not necessarily mean a fifty-fifty sharing of time. Bercegeay v. Bercegeay, 96-0516, p. 4 (La.App. 1st Cir.2/14/97); 689 So.2d 674, 676. Distance between the parents inherently tends to prevent an equal sharing of physical custody where the child is of school age. The courts have been willing to "split the child" only when the parents live a short distance from one another and the child is not required to attend different schools. Bercegeay, 689 So.2d at 676.
The trial court erred in implementing an interim custody plan that prevented Bethany from regularly attending and successfully completing the kindergarten program at her school in Minnesota. Although Bethany was not eligible to attend kindergarten in the fall of 1998 in Louisiana by virtue of her birth date, she had been approved to attend kindergarten in Minnesota.[3] Accordingly, Bethany was a child of school age with parents living 1300 miles apart. These factors prohibit equal sharing of physical custody, and it was error for the trial court to order an equal custody plan. This point is further demonstrated by the following facts.
In July 1997, Bethany was admitted in the preschool program at the River Hills Early Childhood Center (River Hills) in Minnesota. Melissa Hansen is a preschool teacher at River Hills. Bethany was in Ms. Hansen's combined three-and four-year-old class. Ms. Hansen testified that Bethany was shy and quiet when she first attended River Hills, but that after a few weeks, Bethany was clearly happy, talkative, and had made several close friends. Pursuant to River Hills' school policy and Minnesota education requirements, the teachers must test the children twice a year. Accordingly, they administered the Learning Accomplishment Profile Test to Bethany in February 1998. Bethany scored very well on the test, which results led to the recommendation that Bethany attend kindergarten at River Hills in the fall of 1998. When Bethany was told of the recommendation, she became very excited.
Jodi Soberg is a preschool and kindergarten teacher at River Hills. Ms. Soberg was Bethany's teacher when Bethany began attending River Hills in July 1997. According to Ms. Soberg, Bethany wanted to be with the teacher all the time when she first arrived at River Hills. However, as the year went on, Bethany began interacting with her peers and developed primary friendships with about five of her classmates. Ms. Soberg was one of the testers for Bethany's Learning Accomplishment Profile Testing. Ninety percent of Bethany's testing results were above the six-year-old level. It has been Ms. Soberg's experience that using this test has been an accurate predictor of how well a child will perform in kindergarten. Additionally, most of Bethany's primary friends in her preschool class were going to start kindergarten at River Hills in the fall of 1998. Consequently, Ms. Soberg was in agreement with the recommendation that Bethany attend kindergarten in the fall of 1998.
In March 1998, Ms. Seavers notified Mr. Templeton in writing about Bethany's assessment by River Hills and the teachers' recommendations that Bethany be enrolled in the kindergarten class in the fall of 1998. Ms. Seavers also sent Mr. Templeton a brochure about the kindergarten program. Mr. Templeton never voiced any objection to this decision made by Ms. Seavers as the primary domiciliary parent. Thus, Ms. Seavers enrolled Bethany in the kindergarten program at River Hills for the fall of 1998.
The trial court obviously disregarded the above facts when it imposed the interim fifty-fifty custody plan at the conclusion of the trial. By having to miss classes at River Hills for alternating three-month periods, Bethany could not successfully complete the kindergarten program that she had been enrolled *1076 in by Ms. Seavers as the domiciliary parent.
LSA-R.S. 9:335B(3) provides as follows:
The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.
As previously stated, Mr. Templeton did not object to Ms. Seavers' March 1998 decision to enroll Bethany in kindergarten for the upcoming school year, despite the fact that he had a rule to change custody pending. Although Mr. Templeton argued at the trial that Bethany was not old enough to attend kindergarten under Louisiana law, he did not present any evidence that Bethany's attendance in the 1998-1999 kindergarten program was not in her best interest. Thus, there was no evidence to rebut the presumption that this decision by Ms. Seavers, made with notice to Mr. Templeton, was not in Bethany's best interest. Therefore, it was error for the trial court to negate this decision under the facts of this case. For these reasons, we find that the trial court erred in imposing the temporary fifty-fifty custody plan.
Additionally, we are concerned about the trial court's action in making such a drastic change to the custody plan considering the trial court's decision to defer ruling on the primary issues of domiciliary parent status, child support and the community property partition. Although the modified custody plan was deemed "temporary" or "interim," the trial court's plan governed fifteen months of custodial periods. To date, the trial court has not rendered a decision on any of the primary issues which were taken under advisement. This interim order has caused a massive upheaval in the routine that Ms. Seavers had worked to establish with young Bethany for nearly a year in Minnesota. We cannot ignore the fact that Mr. Templeton originally consented to the move to Minnesota and worked out an extended custody plan that he believed would facilitate his relationship with Bethany despite the move. Nor can we ignore the timing of the filing of Mr. Templeton's rule to change custody. This rule was filed in immediate response to Ms. Seavers' rule to set child support. It is interesting to note that in the answer and rule to change custody, Mr. Templeton waived any claim to child support from Ms. Seavers if he were awarded primary custody of Bethany. However, in his subsequent rule to change custody filed with the assistance of a new attorney, Mr. Templeton specifically sought a child support award.
Finally, we note the lack of a factual basis to establish that the fifty-fifty interim custody plan imposed by the trial court was in the best interest of Bethany. The only expert testimony presented at the trial established that a plan such as the interim plan imposed by the trial court is not in the best interest of a child Bethany's age.
Marcia Cox, a clinical social worker, was accepted by the trial court as an expert in the field of child development and family systems. Ms. Cox testified that a fifty-fifty split custody schedule with a child Bethany's age would be inappropriate in the case because of the distance between Minnesota and Louisiana. Ms. Cox further noted the difficulty in a four-and-a-half-year-old changing schools back and forth, and Bethany's need for stability in her life. In Ms. Cox's professional opinion, it would be very confusing to a child who has moved 1300 miles away in a year and established a residence, to change residences again with a different domiciliary parent. Therefore, Ms. Cox would not recommend any other custody plan for a four-or five-year-old child traveling between Louisiana and Minnesota than the plan agreed to by the parties in the May 1997 stipulated judgment.
For these reasons, we vacate the judgment of the trial court ordering alternating equal three-month custodial periods with each parent in different states. We reinstate the joint custody plan contained in the May 1997 stipulated judgment until the trial court issues a ruling on the matters taken under advisement, including the issuance of a permanent custody plan. Because we have vacated *1077 the judgment on the grounds set forth above, we need not address Ms. Seavers' assignments of error which pertain to the exclusion of evidence offered by Mr. Templeton's mental health professional.

DE NOVO REVIEW AND RULING ON MATTERS TAKEN UNDER ADVISEMENT
Ms. Seavers further argues that the trial court violated LSA-R.S. 13:4207 by not rendering judgment on matters taken under advisement within thirty days from the time the case was submitted for decision. Accordingly, Ms. Seavers urges this court to conduct a de novo review and render judgment on the matters taken under advisement.
We agree that the trial court has violated LSA-R.S. 13:4207 by not rendering a decision within thirty days on the matters taken under advisement. However, we are not aware of any authority, and Ms. Seavers has not cited us any, which would allow us to conduct a de novo review and render judgment on these matters on this basis. Therefore, this assignment of error is without merit.

CONCLUSION
Accordingly, we grant Ms. Seavers' writ and vacate that part of the trial court judgment ordering the alternating equal custodial periods between Ms. Seavers and Mr. Templeton. We reinstate the "visitation" schedule contained in the May 1997 stipulated judgment. Finally, we remand the matter to the trial court for a decision on the domiciliary parent designation and the other matters that were taken under advisement. Costs of this appeal are assessed to Mr. Templeton.
APPEAL CONVERTED TO SUPERVISORY WRIT; WRIT GRANTED; JUDGMENT VACATED IN PART; MAY 1997 STIPULATED JUDGMENT REINSTATED; AND MATTER REMANDED.
NOTES
[1] The rule referred to the October 22, 1996 stipulated judgment, despite the fact that a modified visitation plan was outlined in the subsequent May 1997 stipulated judgment.
[2] LSA-C.C.P. art. 1915B provides in pertinent part as follows:

(1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, theories, or parties ... the judgment shall not constitute a final judgment unless specifically agreed to by the parties or unless designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal.
[3] Minnesota law also imposes a minimum age requirement for kindergarten attendance. Pursuant to M.S. 120A.20, Subd. I., before a pupil can be admitted to any public school as a kindergarten pupil, the pupil must be at least five years of age on September 1st of the calendar year in which the school year for which the pupil seeks admission commences. However, this statute also allows any school board to establish a policy for admission of selected pupils at an earlier age.