On Rehearing
Before WILLIAMS, STEWART, CARAWAY, DREW and MOORE, JJ.
CARAWAY, J.
|, Finding that the trial court’s change of custody ruling in favor of *834 Christy Lynn Winnon Bruner (“Bruner”) did not follow the requirements of Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), we granted rehearing and now reverse the ruling and restore custody in the domiciliary parent, Jason Ted Gray (“Gray”).
The recitation of the facts as set forth in this court’s original opinion is accepted for the purposes of this ruling on rehearing. Those facts noted that “the child was able to enjoy a close relationship with both parents,” regardless of the distance between the parents because of Gray’s out-of-state residency. The previously adjudicated relationship of joint custody allowing for relocation outside of Louisiana was neither alleged nor shown to be detrimental to the child during the period following the initial judgment. The additional three-hour driving time from Kansas was likewise not shown to affect “the responsibility for the care and rearing of the child previously exercised by each party” under the existing order allowing Gray to relocate out-of-state. See La. C.C. art. 134(12). No allegation in Bruner’s rule to modify custody asserted that “the love, affection, and other emotional ties” existing between Gray and his son, another of the factors of C.C. art. 134, were harmed or neglected because of Gray’s conduct. Although she asserted that the proposed move to Kansas would disrupt the child’s school environment, there is no allegation of harm or change to the family environment for Gray and the child. The relationship was 12continuously fostered by the father’s love, affection and other emotional ties since the time of the initial judgment.
With this fact setting, which involves only a change in the out-of-state location of the domiciliary parent, the question presented concerns how the special relocation act (La. R.S. 9:355.1, et seq.) (hereinafter the “Act”) applies a second time in light of the important considerations of Bergeron.
At the time of the initial decision allowing Gray to remain as domiciliary parent in the 2007 relocation to Alabama, the “considered decree” adjudicated the custody dispute under the special multiple factor test of Section 9:355.12 of the Act. Again, in Bruner’s present action to modify custody, the trial court considered the test of Section 9:355.12 and placed the burden of proof on Gray under Section 9:355.13 as the parent proposing the relocation. The enumeration of the many factors in Section 9:355.12 parallels the listing of the multiple factor test of Civil Code Article 134 with special emphasis on the logistical and economic circumstances associated with a relocation and, particularly in this case, an out-of-state relocation. Factor 12 of Section 9:355.12 brings “any other factor affecting the best interest of the child” into consideration in the relocation contest, thereby requiring review of the Article 134 factors. Indeed, the best interest of the child is always paramount. Therefore, in the time span of only 24 months, separate trial judges made conflicting Section 9:355.12 rulings concerning Gray’s out-of-state residency.
| .-¡Some of the justifications for the heavy burden of proof of the Bergeron ruling concerned protecting parties and the child from vexation and expense attendant to multiple unjustified lawsuits, conserving judicial resources, and minimizing the possibility of inconsistent decisions. Berger-on, supra, at 1195. These procedural concerns address the substantive best interest of the child principle. Citing the prior ruling of the court in Turner v. Turner, 455 So.2d 1374 (La.1984), the Bergeron court emphasized that “the important thing is not to abuse the children by dragging them constantly through the court system, when there has not been a real change in circumstances sufficient to justify a change in custody.”
*835 The significant change in circumstance which was adjudicated in this case in 2007 was the out-of-state relocation. At that time, the nexus of joint custody operating in Louisiana was first broken. The Act’s special framework to adjudicate the parental sharing of custody was employed at that time, resulting in a decision to allow Gray to remain as domiciliary parent and move a great distance away from the state. With out-of-state relocation at the center of the controversy in 2007, the critical best interest of the child determination was that the child should be with Gray for the greater amount of time.
Despite Gray’s move from Alabama to Kansas, no change in the multistate status of the existing custody arrangement and no significant change in the distance between the parents have occurred. The new location of residence is thus similar to an intrastate move by a domiciliary parent. In such cases before and after the Act, “it has been held that an intrastate move |4is not per se a material change of circumstances such that a court may presume that it will materially affect the child’s welfare without further evidence.” Major v. Major, 02-2181 (La.App. 1st Cir.2/14/03), 849 So.2d 547, and cases cited therein. See also, Cooley v. Cooley, 94-251 (La.App. 3d Cir.10/5/94), 643 So.2d 408; Bercegeay v. Bercegeay, 96-0516 (La. App. 1st Cir.2/14/97), 689 So.2d 674. Such intrastate relocation by the domiciliary parent usually disrupts the child’s school environment, but that is not automatically a material change in circumstances that allows parents abiding under existing custodial consent decrees to seek a change in custody. We likewise do not view the additional distance now involved with this multistate custody arrangement as amounting to a “material change of circumstances,” [1] which is a lesser measure for a change of custody than the heavy burden of Bergeron.
Reviewing the provisions of the Act, we find that the Bergeron concerns are not legislatively overridden in a case seeking relitigation under the Act. This is an out-of-state relocation situation, falling under the Section 9:355.1(4)(a) definition of relocation as “intent to establish legal residence with the child at any location outside of the state.” Id. In the light of Bergeron, the correct reading of the definition is that the initial establishment, founding or beginning of that out-óf-state residency is the Act’s concern for adjudication. That adjudication occurred in 2007 and out-of-state residency by the domiciliary parent was decided.
1 sEven more significant, the applicability of the Act is limited in Section 9:355.2(B), as follows:
To the extent that a provision of this Subpart conflicts with an existing custody order, this Subpart shall not apply to the terms of that order that governs relocation of the child.
When Bruner filed her rule to change custody, there was “an existing custody order ... that governfed] relocation of the child,” which was a considered decree under Bergeron and satisfied all the criteria of Section 9:355.12. The conflict which has now arisen between the initial trial judge’s custody determination and the present trial court ruling is within the meaning of “conflict” which Section 9:355.2(B) addresses and clearly within the important concerns of Bergeron. The trial court *836 erred in allowing the parties to relitigate the issues previously resolved under Sections 355.12 and 355.13.
Accordingly, there being no showing that the child’s continued custody with Gray will be so deleterious to the child as to justify a change in custody, the ruling of the trial court is reversed. Costs of appeal are assessed to appellee.
REVERSED.
WILLIAMS, J., dissents with written reasons.
STEWART, J., dissents for reasons assigned by Judge WILLIAMS.

. A "material change of circumstances” is the legal measure for change of custody consideration where the original custody decree was not the result of a "considered decree.” Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731. The "considered decree” setting is governed by Bergeron.