960 So.2d 92 (2007)
Thomas Warren POUNDS
v.
Brandi Nicole SPEARS.
No. 2006 CU 2375.
Court of Appeal of Louisiana, First Circuit.
March 23, 2007.
*93 Mark D. Plaisance, Baker, Norma Beedle, Baton Rouge, Counsel for Plaintiff/Appellant, Thomas Warren Pounds.
Sal J. Liberto, Jr, Covington, Counsel for Defendant/Appellee, Brandi Nicole Spears.
Before: CARTER, C.J., WHIPPLE, and McDONALD, JJ.
WHIPPLE, J.
This matter is before us on appeal by Thomas Warren Pounds, the domiciliary parent and father of the minor child, D.P., from a judgment of the trial court: (1) setting forth a visitation schedule for Brandi Nicole Spears, mother of the minor child; and (2) designating the child's school and pediatrician. For the following reasons, we affirm in part, vacate in part, and remand.

FACTS AND PROCEDURAL HISTORY
D.P. was born on October 10, 2000, as a result of a relationship between Pounds and Spears. Although Pounds and Spears never married, Pounds formally acknowledged D.P. and the three lived together after his birth until April of 2004 when the parties separated.[1] On April 22, 2004, Pounds filed a petition seeking custody of D.P. The parties reunited in July of 2004; thus, the petition was not set for hearing.[2] *94 The parties separated again on July 31, 2005, when D.P. was nearly five years old. On August 1, 2005, Spears began dating Barney Ritchie, whom she eventually married on October 15, 2005. After Pounds and Spears separated, Pounds again initiated proceedings seeking custody of D.P.
On November 9, 2005, the trial court rendered an interim order that D.P. live with Spears and that Pounds be allowed visitation consisting of every other weekend and every Wednesday, pending a hearing on the matter. The trial court further ordered that D.P. was not to be alone with Ritchie, and that D.P. was not to ride in any car that Ritchie was driving.[3]
Following a trial on January 30, 2006, the trial court rendered oral reasons granting Pounds and Spears joint custody of D.P., designating Pounds as the domiciliary parent, and granting Spears visitation on alternating weekends "subject to any camps or summer programs that the child is enrolled in" and alternating holidays. A judgment in conformity with the trial court's oral reasons was signed on March 9, 2006.
On June 2, 2006, Spears filed a pleading captioned "Rule to Set/Amend Visitation, Transportation and Health Care Provider for the Minor and for Contempt," requesting: (1) that the existing visitation schedule be amended to allow her to provide day care for D.P. during the summer; (2) that Dr. Palazzo be designated as the child's treating pediatrician; and (3) that she not be required to travel to Hammond from Bogalusa to pick up the minor child for visitation.
At the time the rule was filed, Spears was unemployed, was not attending school, and was residing in Bogalusa with Ritchie. Pounds had graduated from Southeastern Louisiana University with degrees in finance and accounting in December of 2005 and had obtained a full-time job in Hammond at the university. Thus, when the school year ended, Pounds had enrolled D.P. in a summer day camp program in Hammond in order to be able to accept the job at the university.
In addition to the visitation awarded by the trial court, i.e. alternating weekends and holidays, the parties had agreed that Spears would also pick up the child from school every Wednesday and keep him until 6:30 p.m., and that during the summer, Spears would pick up D.P. from day camp every Wednesday at 1:00 p.m. The parties *95 had further agreed that when it was her scheduled weekend visitation, she would pick up D.P. on Friday at 1:00 p.m. from day camp to begin her weekend visitation. After service of this rule, when Pounds became aware that Spears was complaining about having to drive to Hammond to pick up the child, he began transporting D.P. from day camp to Bogalusa every Tuesday after work, where Spears would meet to pick him up and keep him overnight until Wednesday evening. Likewise, for Spears's scheduled weekend visitation, Pounds would bring the child from day camp to Bogalusa on Thursday after work and Spears would keep the child until Sunday evening.
Spears's rule was heard on July 12, 2006. Thereafter, on August 14, 2006, the trial court rendered judgment containing numerous provisions, many of which are not at issue in this appeal. However, with respect to domiciliary custody and the visitation schedule, and other matters at issue herein, the trial court ordered:
(1) That the child's pediatrician be Dr. Palazzo;
(2) That Spears's visitation be modified to consist of Monday through Friday, except for Tuesday or Wednesday overnight, and alternating weekends from Saturday at 12:00 p.m. until Monday morning;
(3) That Pounds retain physical custody of the child at all other times including alternating weekends from Friday after work until Monday morning, on Spears's weekends from Friday after work until Saturday at 12:00 p.m., and Tuesday overnight or Wednesday overnight every week after work;
(4) That the holidays remain as previously ordered except that Pounds be allowed as much time as possible with the child on Mondays designated as a school holiday following his having the child on a weekend or if the mother is working;
(5) That the child attend Enon Elementary School for kindergarten; and
(6) That for first grade, the Lab School at Southeastern Louisiana University would be considered as an alternative locationto be further addressed in a pre-trial conference before scheduling.[4]
Pounds appeals, contending that because the domiciliary parent has the legal authority to make all decisions affecting the child, by ordering Pounds to live a majority of the time with Spears and specifically dictating the child's school and physician, the trial court unlawfully *96 stripped Pounds of his rights as the domiciliary parent and effectively made Pounds a domiciliary parent in name only. Pounds further notes that a considered custody decree can only be modified if the current custodial arrangement is deleterious to the child or the advantages to the child from the change outweigh any harm caused by the change of environment and Spears failed to demonstrate that the current decree was harmful to the child or that a change would benefit the child. Thus, he contends, the trial court committed legal error by modifying a decree issued only six months earlier.

DISCUSSION

Assignment of Error Number One
In Pounds's first assignment of error on appeal, he contends that the trial court "erroneously stripped [him] of his rights" as domiciliary parent to make decisions affecting the child by dictating the child's school and physician, and by ordering that the minor child reside with his mother for the majority of time.
Louisiana Revised Statute 9:335(B)(2) provides that the domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents. Pursuant to LSA-R.S. 9:335(B)(3), the domiciliary parent has authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child are subject to review by the court upon motion of the other parent. However, in this judicial review, it is presumed that all major decisions made by the domiciliary parent are in the best interest of the child. LSA-R.S. 9:335(B)(3). Moreover, the burden of proving they are not in the best interest of the child is placed on the non-domiciliary parent who opposes the decision. Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731, 738.
Pursuant to the judgment and apparent from the trial court's oral reasons, the trial court decided that D.P. should attend Enon Elementary School near Spears's home in Bogalusa for kindergarten and reside with Spears during the week. The trial court further determined that for first grade, the Lab School at Southeastern Louisiana University would be considered as an alternative location, but concluded that the matter would need to be addressed in a pre-trial conference before scheduling. Accordingly, the trial court modified the visitation schedule apparently to facilitate the child's attendance at Enon Elementary School, by providing that Spears had "visitation" with the minor child every Monday through Friday, except for Tuesday or Wednesday overnight, and alternating weekends from Saturday at 12:00 p.m. until Monday morning. However, Pounds, the domiciliary parent, retained physical custody of the child only one night per week and on alternating weekends from Friday after work until Monday morning.[5] In sum, despite the trial court's use of the term "visitation," the schedule set forth by the trial court awarded Pounds, the domiciliary parent, physical custody of D.P. four week nights, eight weekend nights, and five weekend days on an average month, effectively ordered the child to primarily reside with Spears and effectively making her the actual domiciliary parent.
We agree with appellant that given the visitation schedule confected by the *97 trial court to accommodate its determination that the child should attend Enon Elementary School, the child clearly does not primarily reside with the domiciliary parent, as required by LSA-R.S. 9:335(B)(2). Thus, we find the trial court erred.[6] Accordingly, we vacate the portion of the judgment setting forth the visitation schedule and remand for the trial court to establish a visitation schedule in conformity with LSA-R.S. 9:335 and the views expressed herein.
Although we agree with Pounds that it was error for the trial court to order that the child attend school in Bogalusa when Pounds works in Hammond, given that the school year is nearly completed, we feel it would be harmful for the child to be pulled from his current classroom situation at this time and enrolled in a new school. Accordingly, on remand, the trial court shall impose such conditions necessary to ensure that the child be permitted to complete the school year at Enon Elementary School. Thus, we remand this matter to the trial court to conduct a hearing, within thirty (30) days from the date this opinion is rendered, to confect a visitation schedule for Spears that will allow D.P. to reside primarily with Pounds in accordance with the provisions of LSA-R.S. 9:335 consistent with the trial court's previous designation of him as the domiciliary parent.
Pounds also contends in this assignment that the trial court erred in designating Dr. Palazzo as the child's pediatrician, noting that as the domiciliary parent, he has the legal authority to make such decisions affecting the child. In support, Pounds notes that in October or November of 2005, he and Spears discussed changing D.P.'s pediatrician. He testified that Spears, who was a former employee of Dr. Palazzo, told him that for personal reasons, she wanted D.P. to be seen by someone other than Dr. Palazzo. According to Pounds, before the new LSU clinic opened, Dr. Palazzo was the only pediatrician in Bogalusa; thus, there were no other options. He further noted that Spears had accompanied him and D.P. to all three visits at the LSU clinic in Bogalusa and never voiced any complaint to him about the clinic, the physicians, or D.P.'s treatment by them. Pounds testified that overall, he was very satisfied with the physicians at the clinic and their treatment of D.P.
In designating Dr. Palazzo as the child's pediatrician, in contravention of the decision previously made by the parties to have the child treated by a doctor at the LSU clinic, the trial court stated only that if the child was comfortable with Dr. Palazzo, he saw no problem with him going there, "rather than going to some stranger."[7] However, this ruling ignores the fact that the child had been receiving on-going care at the clinic. Moreover, as Pounds correctly notes, the domiciliary parent has the ultimate right to make such decisions. As such, courts should be reluctant to becoming involved in such decision-making absent a showing that a parent has improperly exercised such authority.
We agree that aside from voicing her personal preference, Spears has failed to produce any evidence to show that the child was more comfortable with Dr. Palazzo, *98 that the care being provided by the clinic was improper, or that the decision to change doctors was contrary to D.P.'s best interest. Instead, on review, we find there was no evidence presented to rebut the presumption that this decision by Pounds, which was clearly within his authority to make, was proper as a matter of fact and law. Therefore, it was error for the trial court to negate his decision under the facts of this case. See Templeton v. Templeton, 1998-2503 (La.App. 1st Cir.4/1/99), 730 So.2d 1070, 1076.
Moreover, we note that although the parties dispute whether there was discussion regarding this decision, the "communication" requirement does not abrogate the provisions of LSA-R.S. 9:335(B)(3), which grants the authority to Pounds to determine the best pediatrician for D.P., subject to judicial review. See Holland v. Holland, 34,996 (La.App. 2nd Cir.11/6/01), 799 So.2d 849, 852. Thus, we also vacate the portion of the judgment designating Dr. Palazzo as D.P.'s pediatrician.
We find merit to this assignment.

Assignment of Error Number Two
Pounds next contends that the trial court trial court erred in modifying the considered custody decree, as Spears failed to meet the Bergeron[8] heavy burden necessary to warrant such a modification, i.e., that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or that harm likely caused by a change of environment is substantially outweighed by its advantages to the child. See Bergeron, 492 So.2d at 1200 & 1202.
On review, we note that the August 14, 2006 judgment, by its stated terms, did not modify the existing decree of joint custody and designation of Pounds as domiciliary parent. However, as discussed above, we agree that the judgment significantly (and improperly) modified the parties' visitation schedule, and improperly designated the child's primary physician, in contravention of LSA-R.S. 9:335 and the prior designation of Pounds as domiciliary parent.[9] Because we have vacated the judgment in these respects, we pretermit further discussion of this assignment of error.[10]

CONCLUSION
For the above and foregoing reasons, the portion of the August 14, 2006 judgment of the trial court setting forth the visitation schedule and providing for physical custody of D.P. and designating Dr. Palazzo as the child's pediatrician, is vacated: This matter is remanded to the trial court to conduct a hearing, within thirty (30) days from the date this opinion is rendered, to confect a visitation schedule in accordance with the provisions of LSA-R.S. 9:335 and for any necessary further proceedings consistent with the views expressed herein. Costs of this appeal are *99 assessed against the appellee, Brandi Nicole Spears.
AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] After D.P. was born, the parties lived at Pounds's mother's home and Spears's grandparent's home in Bogalusa.
[2] When the parties reunited in July of 2004, they resided in a mobile home that Pounds had purchased and placed on Spears's grandparent's property until their separation in July of 2005.
[3] The record shows that on October 27, 2005, Ritchie appeared with Spears before the Commissioner, on a rule for protective order filed by Pounds. The parties and Ritchie were ordered to submit to a drug screen, which Ritchie failed, testing positive for methadone, opiates, and oxycodone. Based on these results, on November 3, 2005, the Commissioner granted the restraining order sought by Pounds, prohibiting Ritchie from coming into contact with the child for sixty days, pending the custody hearing in January of 2006.

Ritchie's lengthy criminal record, which included multiple felony drug possession convictions, two DWI convictions, disturbing the peace offenses, a simple battery charge, and a restraining order prohibiting him from harassing or contacting his ex-wife, were also introduced into evidence.
At the conclusion of the November 9, 2005 hearing, in ordering that the minor child not be left alone with Ritchie or ride in a vehicle driven by Ritchie, the trial court stated:
I'm going to make a few calls, and its going to be offensive probably to some of you, but I'm going to lay it out just like I see it.
To begin with, I have a problem with Mr. Ritchie. I can't tell you who to associate withthe Court has limitations as to what they can tell people to do. I can't tell you who to marry, who to live with or whatever.
I can't tell you to go to school. I can't tell you what to do in your life.
But, I can restrict exposure of a child to adults or to other children or to individuals. That's part of my job.
[4] The judgment further ordered: (1) that Spears take the child to scheduled summer programs with other children such as Bible School or summer camp; (2) that it is "recommended and strongly suggested that [Spears] obtain employment, full or part-time"; (3) that neither parent discuss custody litigation or the other parent in front of the child; (4) that neither parent talk about the custody litigation in the presence of the child and his pediatrician, or any other professional involved with the child; (5) that Spears not permit the child, her husband, or any other person to call or refer to her husband as the father or daddy of the minor child; (6) that each parent inform the other parent in advance of all activities of the child including but not limited to school functions and awards; (7) that the parties equally split the costs of school supplies and school uniforms; (8) that Spears transport the child to and from school and that Pounds has the right to take the child when he is not working; (9) that the minor child be evaluated by a mental health professional appointed by the court; (10) that the mental health professional make the decision if she finds necessary to evaluate the minor child's parents and step-parent; and (11) that all previous judgments and orders of the court not modified by the judgment remain in full force and effect.
[5] The judgment provided that the parties would continue to alternate holiday visitation.
[6] Notably, the judgment is silent as to the trial court's previous concerns about D.P.'s contact with Ritchie.
[7] Spears felt that since Dr. Palazzo had been D.P.'s pediatrician since birth, she preferred that D.P. be seen by him, rather than possibly having to see a different physician at the clinic. Spears complained that she was unable to pronounce the physicians' names at the clinic, and complained that it was difficult for her to understand the doctor when he spoke.
[8] See Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
[9] With regard to Pounds's claim (which may now be moot given the passage of time) that the trial court also erred in overruling his decision to enroll D.P. in summer day camp, we again note that such decision-making is within the purview of the domiciliary parent absent a showing by the non-domiciliary parent that a decision is not in the child's best interest, which Spears has failed to do herein.
[10] Nonetheless, although we pretermit discussion, we note that our review of the record indicates that since the rendition of the considered decree, as set forth in the March 9, 2006 judgment, there does not appear to have been any change of circumstances sufficient to meet the Bergeron burden as set forth above.